## STARR ET AL V. CASE ET AL., ADM'RS

1. **Practice in Supreme Court**: TIME FOR CERTIFYING EVIDENCE: STATUTE CONSTRUED. In this case, decree was entered April 4, 1881, the evidence was certified by the trial judge August 1, 1881, and the cause was submitted to the Supreme Court April 21, 1882. *Held*, that the evidence was certified in time to entitle appellant to a trial *de novo*, under Chap. 35, Laws of 1882, which provides that the evidence may be certified at any time within the time allowed for taking an appeal, and which is, by its terms, made applicable to all causes not already submitted to the Supreme Court.

2. **Partnership**: TIME OF PARTNER: CONTRACT CONSTRUED. Where articles of co-partnership provided that each partner should give to the business of the firm his whole time and attention, "*except* such time as may be proper for the fulfilling of the duties of any office or agency held individually by either partner; * * * and neither partner shall accept or continue to hold any office or agency unless by the consent of his co-partner:" *held* that the exception applied not only to offices and agencies held by individual partners at the time of the formation of the partnership, but also to offices and agencies held by a partner at any time during the continuance of the partnership, and the partner so holding any such office or agency was alone entitled to the profits thereof.

3. ———: ACCOUNTING BETWEEN SURVIVORS AND ESTATE OF DECEASED PARTNER. The surviving partners, in an action against the administrator of a deceased partner, cannot have money, which the decedent in his individual capacity held for the use of a third person, appropriated to the payment of a debt owing by such third person, to the firm: not at least, without making such third person a party to the action.

4. ———: ———: APPROPRIATION OF PAYMENT. Where the firm of S., P. & H. was dissolved by the death of P., and C. was owing the firm and was also owing S. & H., and money came into the hands of S. & H. to the credit of C. from the sale of a judgment out of which a part of the account of S. P. & H. arose, *held* that, since neither C. nor S. & H., had made any application of the money, the law would apply it on the debt due S., P. & H., that being the oldest debt.

5. ———: ———: DUTY OF SURVIVOR. It is sufficient that the surviving partners, in settling the affairs of the partnership, act in good faith and with reasonable diligence; and the fact that money came into their hands to the credit of persons who were owing the firm, did not make it obligatory on them to retain out of such money enough to satisfy the debts due the firm, though they might have done so.

6. ———: ———: COMPENSATION OF SUVIVORS. Surviving partners are not entitled to compensation for settling the affairs of the partnership; and the survivors of a *legal* firm are not entitled to compensation for *legal* services rendered in the collection of claims due the firm

7. ———: ———: USE OF FIRM PROPERTY. Surviving partners are entitled to the exclusive possession and management of the partnership property for the purposes of settling up the partnership business; and in case of the dissolution by death of a firm of lawyers, it was error to charge the survivors for the use of the firm library pending the settling of the partnership affairs.

8. ———: ———: FORM OF JUDGMENT. In an accounting before the court between the surviving partners and the estate of a deceased partner, it was error to render judgment against the survivors *jointly*. The judgment should have been against them *severally*, proportioned to their several liability.

9. ———: ———: APPORTIONMENT OF COSTS. In this case—an action for an accounting between surviving partners and the estate of a deceased partner—each party was adjudged to pay the costs and fees of his own witnesses, and such part of all remaining costs, including costs of appeal, as is proportioned to his interest in the firm.

*Appeal from Floyd Circuit Court.*

WEDNESDAY, OCTOBER 18.

THIS is an action in equity of P. B. Starr and A. M. Harrison, surviving members of the late firm of Starr, Patterson

& Harrison, against the administrator and heirs at law of
J. G. Patterson, deceased, for an accounting of the business
of said firm. The petition prays: "That this court order
adjudge and decree that an account be taken and had of the
said partnership dealings and transactions, between plaintiffs
respectively, and said J. G. Patterson, deceased, and that what
shall appear therein to be due from defendants to plaintiffs
respectively, may be decreed to be paid by defendants to
plaintiffs respectively, and that it may be decreed that the
plaintiffs have a lien to the amount that shall be found due
plaintiffs respectively, on such accounting upon the interest
of said J. G. Patterson in the partnership property." The
court found that there was due the defendants from the plaint-
iffs $1,220.40, and that there was due the defendants from
the plaintiff A. M. Harrison the sum of $88.25 for use of
library. The plaintiffs served notice of appeal "from the
findings, judgment and decree of the said Circuit Court in
said cause."

*D. J. Gibson* and *J. E. Owens*, for appellants.

*Ellis & Ellis* and *J. S. Root*, for appellee.

DAY, J.—I. The appellees insist that the evidence in the
cause was not certified by the judge during the term at which
1. PRACTICE the cause was tried, nor during the following va-
in supreme
court: time    cation, and hence, under the construction placed
of certifying
evidence:     by this court upon section 2742 of the Code, the
statute con-
strued.       cause cannot be tried *de novo*. The decree was
entered on the 4th day of April, 1881. The evidence was
certified on the 1st day of August, 1881, which was within
the time allowed for taking an appeal, and, in fact before the
appeal was taken. The cause was submitted in this court on
the 21st day of April, 1882. Before the submission of the
cause, to-wit: March 10, 1882, chapter 35, laws of Nineteenth
General Assembly took effect by publication. This chapter
provided that the evidence may be certified by the judge at

any time within the time allowed for the appeal of the cause. And it is expressly made applicable to all causes not already submitted to the Supreme Court. Under this statute the evidence was certified in time.

II. The decree of the court was reached through the examination of a number of distinct items of account, some of which were determined in favor of, and others adverse to, the appellants. The appellants now insist that, inasmuch as the defendants have not appealed, only those items of account are to be examined with which the plaintiffs are dissatisfied. In support of this position appellants cite and rely upon *Hintrager v. Hennesy*, 46 Iowa, 600; *Smith v. Wolf*, 53 Id., 555; *Cassady v. Spofford*, 57 Id., 237; *Farr v. Reilly*, 58 Id., 399. Whether the facts of this case take it out of the rule of the cases above cited we need not determine. We do not find that the defendants are entitled to a reversal upon any of the points embraced in the decree. It is not, therefore, necessary that we should determine whether the defendants are in a position to insist upon a rehearing of the items determined adversely to them.

III. The co-partnership between plaintiffs and J. G. Patterson was formed on the 13th day of September, 1873. In the division of the proceeds, S. B. Starr was to receive seven-twentieths, J. G. Patterson eight-twentieths and A. M. Harrison five-twentieths. The articles of co-partnership contain the following provisions:

2. PARTNERSHIP : time of partners : contract construed.

"It is further agreed that at all times during the continuance of their co-partnership each of said partners shall give their (his?) whole time and attendance, and will use their and each of their best endeavors, and to the utmost of their skill and ability, exert themselves for their joint interest and benefit, except such time as may be proper for the fulfilling of the duties of any office or agency held individually by either partner, and for transaction of their private business; and neither partner shall accept or continue to hold any office or agency, unless by the consent of his co-partners." At the time of the

formation of the co-partnership, Harrison was a justice of the peace, and continued to hold that office during the existence of the partnership. On the 7th day of March, 1878, J. G. Patterson was appointed right of way agent for the Chicago, Milwaukee and St. Paul Railway Co., to settle right of way from Algona west, at a salary of $150 per month and expenses, and he continued in this capacity until his death on the 39th day of October, 1878. For his services during this period he was paid, in addition to his expenses, $1166. The plaintiffs claim that this sum constituted a portion of the earnings of the firm, and must be divided in the proportion of the respective interests of the partners. We think the articles of co-partnership entitle J. G. Patterson to the benefits of this employment. The articles of co-partnership except from the obligation of each partner to give his whole time and attention to the interest of the firm, "such time as may be proper for the fulfilling of the duties of any office or agency held individually by either partner." Appellants insist that the word *held* is in, past and present tense, and applies only to offices or agencies held by a partner when the co-partnership was formed. This we think is not the proper construction of the exception. The word *held* is the perfect participle of the verb *hold*.

"Participles have no reference to time, they simply show the action, being or state of the verb from which they are derived as finished or unfinished." See Welch's Analysis of the English Sentence, page 87. It is evident from the context that the members of the partnership contemplated their probable future as well as their present relations, when they provide, that "neither partner shall accept or continue to hold any office or agency unless by the consent of his co-partners."

The meaning of the word *held* is not to be determined simply from its form, but from its relation to other parts of the contract, and it must be so construed, if possible, as to give force and effect to all parts of the agreement. The word, whether considered grammatically or in relation to other parts

of the contract, cannot legitimately be limited to an office or agency in the possession of one of the partners when the contract was formed, but includes any office or agency of which a partner might become possessed at any time during the continuance of the co-partnership.

The protection of the other partners is found in the provision that no partner shall accept or continue to hold any office or agency, unless by the consent of his co-partners.

Appellants lay stress upon the words "*as may be proper*," and insist that they qualify the reservation of time made by the individual members of the firm; that the reservation must be so construed as not to interfere materially with the main purposes for which the firm was organized, and that it is now a question for the court to determine whether the time used by Patterson was proper to be withheld from the service of the firm, and appropriated to his own use. Inasmuch, however, as the articles of co-partneship excepted to each partner so much time as might be proper for the fulfilling of the duties of any office or agency held by him, the remedy of the other partners, if dissatisfied with the amount of time devoted by one of their number to an office or agency, was, under the articles of co-partnership, to object to his continuing to hold the office or agency, or to his continuing to devote so much time to it, and, in case he persisted, to dissolve the partnership.

If, however, it should be conceded that it is a question for the court to determine whether the time used by Patterson was proper to be withheld from the firm, we have to say that we are unable to find from the testimony that he neglected the business of the firm. The evidence shows that Mr. Starr had principal charge of collections, and that Mr. Harrison had more exclusive charge of the trial business.

Mr. Harrison testifies as follows: "As a rule Mr. Patterson participated in the trials of causes in which Starr, Patterson & Harrison were employed during the years 1876, 1877 and 1878, though there were some exceptions. He rarely went to Chickasaw county, while I went there almost every term.

Very frequently, he went to other counties where I didn't go; I don't now recall any case outside of Chickasaw that I tried to court and jury, when Mr. Patterson was not present. The court, we think, properly held that the plaintiffs were not entitled to a share of the earnings of Patterson as right of way agent.

IV. The plaintiffs claim that they are entitled to a share of the earnings of J. G. Patterson as Secretary of the Water Power Company. The facts respecting this employment were properly found by the court below as follows: "It appears in evidence that Mr. Patterson, in the Spring of 1876, was elected Secretary of the Water Power Co.; that he kept the books of the company and did some corresponding for the company while it was operating a grist mill, and spent some time at the mill site during the construction of the dam, race and mill, advising with the superintendent of construction; that he performed these duties usually in the morning before nine o'clock, and evening after six o'clock, and sometimes attended to the books and correspondence on Sundays; but it also appears that he spent considerable time, during the construction of the mill, dam and race, at the mill site, during regular office hours, and did some of his correspondence and work during office hours. It also appears that he received from the company, as Secretary's salary, the sum of $920, and that he has not accounted to the firm for the same."

The court held that the reservation of time in the articles of co-partnership covers this service. This holding, we think, is correct, for the reasons assigned in the determination of the preceding question.

V. It is alleged in the petition that, at the time of the death of said Patterson, the McGregor and Missouri River R. R. Co. was indebted to said firm on book account in the sum of $824.76, and that said Patterson had money in his hands belonging to said Railway Co. sufficient to pay said firm, which had been paid to said Patterson on account of said company,

3. ——: accounting between surviving partners and estate of deceased partner.

and that said Patterson had been paid said amount of $824.76 by said company, but had omitted to charge himself with the same on said firm books, whereby he is indebted to said Starr for seven-twentieths and to said Harrison for five-twentieths thereof. The court below found against the plaintiffs on this claim, and of this action they complain. The abstract does not furnish the data for understandingly determining this claim. The appellants in argument refer to the original account kept by Patterson with the McGregor & Sioux City Railway Company and the McGregor & Missouri River Railway Company Lands, which shows a balance in his hands of about $1,199.60 as belonging to these companies. It is claimed from other evidence introduced that Patterson received and retained belonging to these companies the further sum of $600, and on taxes the additional sum of $472.20, making in all the sum of $2,271.80. There is no evidence in the case from which it can be determined that this amount, if received, was received in behalf of the firm. If Mr. Patterson received and retained this amount belonging to these companies, he is liable to account to them therefor. It cannot be appropriated to the payment of an account held by the firm against the McGregor & Missouri River Railway Company, without making that company a party to the proceeding and affording it an opportunity to dispute the correctness of the account. The evidence taken in this case casts very great doubt upon the validity of this account. A. G. Case testifies that soon after his appointment as administrator he had a conversation with Mr. Harrison and Mr. Starr, in which they told him that the charges that had been made in the account against the McGregor & Missouri River Railway Company were large, and more than what the services would stand, and more than what they expected to get, and that they had already got on the account more than they could get. Milo Gilbert, one of the appraisers of the estate of J. G. Patterson, testified that at the time of the appraisement Starr and Harrison said they thought they would get no more from

that account; that it had been paid all they would expect to get; that there were large charges in those suits they expected to give off in settlement. Mr. Stevens, another of the appraisers, testified that either Mr. Harrison or Mr. Starr stated that the account ought not to be appraised as shown on the books, because they had got all, or nearly all, out of the railway company they could get, they thought. And Spriggs, one of the appraisers, testified that Mr. Harrison stated that the account was practically paid. It does not appear that at the time of making these statements any claim was made that the account had been paid to Patterson. In view of this tesmony the impropriety of appropriating money in the hands of Patterson, to the payment of this account, in an action to which the railway company is not a party, is very apparent. The action of the court on this branch of the case is approved.

VI. On the 30th of December, 1878, John Lawler, the representative of the McGregor & Sioux City and McGregor & Missouri River Railway Co.'s, either as vice-president or as authorized agent, from September 13, 1880, until the time of the death of Mr. Patterson, paid A. G. Case, Adm'r. of Patterson's estate, $287. Lawler testifies that $87 of this sum was paid for expenses, and $250 for services rendered by Mr. Patterson, in 1878, for witness personally. There is no evidence whatever that the payment was made on account of firm or legal business. The court correctly refused to allow the claim of the plaintiffs thereto.

VII. After the death of Patterson, Starr & Harrison, as surviving partners, commenced an action before a justice of the peace against E. M. Clark. E. M. Clark filed a counter-claim against each of the partners individually, that against J. G. Patterson amounting to $30. The justice's docket does not show clearly whether the counter-claim was allowed, but the testimony of Clark shows that Mr. Patterson had procured from him, on firm account, articles to the amount of $26.13. The estate should be charged with this amount.

VIII. The plaintiffs filed a supplemental petition showing

that Starr had collected on account of the firm, since the death of Patterson, various items set forth in a schedule marked 'A' amounting in all to $1,544.26, and that he had paid the debts of the firm as set out in schedule 'B', amounting to $766.41. The first item in exhibit 'A' is as follows: "1878, Nov. 21. To received of clerk Circuit Court Cerro Gordo County, judgment Hildreth v. Quincy, $138.69." The first item of exhibit 'B' is as follows: "1878, Nov. 21. By paid on judg't, Hildreth v. Quincy, $138.69." Respecting this item the finding of the court is as follows: "The first credit item in schedule 'A', dated Nov. 21, 1878, $138.69 as received on Hildreth judgment, v. Quincy appears to be a collection made after the death of Mr. Patterson, and does not appear to be a firm transaction, and hence does not properly appear in this account, but as the same amount is charged on the debtor side in schedule 'B', it does not affect the final result either way." Notwithstanding this finding, the court charges S. B. Starr with $1,544.26, the whole amount received by him since the death of Patterson, including this item of $138.69, and fails to give him any credit for the amount as paid out, thus making the amount charged to S. B. Starr too great by $138.69.

IX. The plaintiffs complain of the action of the court in charging them with $49.75 received from Conley & Co. No 4. ——: ——: complaint is made with the findings of the court appropriation of payment. on this item, which are as follows: "It appears in evidence that, at the time of the death of Mr. Patterson, the firm had an account against S. J. Conly & Co. to amount of $172.30. Since the death of Mr. Patterson, Starr & Harrison sold a judgment for Conly & Co., and received therefor $49.75 to the credit of Conly & Co., and have the amount still in their hands. Starr & Harrison have also an account against Conly & Co., amounting to $93.50. Some of the account of Starr, Patterson & Harrison grew out of the judgment sold for Conly & Co. by Starr & Harrison. Starr & Harrison have other claims in their hands for collection for

Conly, and have not presented the Starr, Patterson & Harrison account for payment since the death of Mr. Patterson." It does not appear that either the debtors, Conly & Co., or the creditors, Starr & Harrison, made any application of this payment. The law, therefore, appropriates the payment and applies it to the oldest debt. Parsons on Partnership, page *431. The court, therefore, properly charged the plaintiffs with this amount.

X. It is claimed that the court erred in charging the plaintiffs with fifteen dollars upon the facts found by the court as follows: "It appears that Star, Patterson & Harrison were retained to defend a case in the Circuit Court for Chester Winterrick, and there was an account against Winterrick of fifteen dollars on the firm's books at time of Patterson's death. Starr and Harrison rendered services for Winterrick in same case worth not less than seventy-five dollars, and have a charge against him of ten dollars on another matter. Starr & Harrison have received sixty dollars on the account, and have given no credit to Starr, Patterson & Harrison." Under the views expressed on the preceding point, Starr & Harrison were properly charged with enough of the sum received by them to satisfy the Starr, Patterson & Harrison account.

XI. It is claimed that the court erred in charging the plaintiff with three distinct items, respectively of the amount of $27.40, $57, and $5.25. It is conceded that duty of survivors. the facts found by the court respecting these items, are correct. These facts are as follows: "That at the death of Mr. Patterson there appeared a balance due the firm of Starr, Patterson & Harrison on the firm's books, from W. & J. G. Flint, to amount of $27.40. That Starr & Harrison have since received on collections for W. & J. G. Flint more than sufficient money to pay the amount due Starr, Patterson & Harrison. They remitted the full amount of these collections without retaining the balance due Starr, Patterson & Harrison."

It appears in evidence that at the time of the death of Patterson there was an account on the firm's books against Silverman & Co. of ninety-nine dollars; that since the death of Mr. Patterson plaintiffs received money for Silverman & Co. on land sale, and remitted the same or paid it over without retaining sufficient to pay or satisfy the amount due Starr, Patterson & Harrison. It appears in evidence that at the time of the death of Mr. Patterson there was an account on the firm's books against Bell, Conrad & Co. to the amount of $5.25; that since the death of Mr. Patterson plaintiffs received fifty dollars for Bell, Conrad & Co. on a claim placed in the plaintiffs' hands for collection since the death of Mr. Patterson, and that plaintiffs did not retain the amount of the Starr, Patterson & Harrison account. The court held that the amount of these several accounts should be charged to the plaintiffs in the accounting between the parties, as though they had retained the same, and that a custom of the late firm, while it existed, not to collect fees on claims until the amount was realized on the claims, would not relieve them as the surviving and settling partners, from this liability. We think the court erred in this holding. While the plaintiffs might have retained the money of these respective parties, coming into their hands in other transactions, and applied it upon a balance of account due the late firm, yet, we think, they were not under legal obligation to do so. And especially is this so, in view of a custom of the late firm not to collect fees on claims until the amount was realized on the claims. The plaintiffs, so long as they act in good faith and with reasonable diligence in adjusting the accounts of the late firm, ought to be allowed to select their own modes of collection. Seven-twelfths of the amount of these claims was coming to the plaintiffs, and they cannot be charged with bad faith or a lack of reasonable diligence, because they did not, in respect to these collections, depart from the custom of the late firm. The plaintiffs should not have been charged with these three items.

XII. The plaintiffs claimed eighty dollars for services rendered by them in three several suits brought by them, since the death of Mr. Patterson, for the collection of claims due the firm of Starr, Patterson & Harrison. On motion of the defendants this portion of the petition was stricken out. Of this action of the court the plaintiffs complain. It is conceded that the general rule is that surviving partners are not entitled to compensation for settling the affairs of the partnership. It is claimed, however, that legal services rendered in the prosecution of claims due the partnership constitute an exception to the rule. In support of this position we are referred to *Vanduzee v. McMillan*, 37 Ga., 300. That was the case of a mercantile partnership. It was held that one of the members of the firm, who was an attorney, might be entitled to compensation for services rendered by himself in the collection of claims due the partnership. In that case the rendering of legal services was entirely foreign to the business of the partnership. In this case the rendering of such services was the business for which the copartnership was formed. We think there is nothing in this case to make it an exception to the general rule.

XIII. The court charged the plaintiffs eighty dollars for the rent of the library since the death of Mr. Patterson. In this, we think, there was error. The death of a partner invests the surviving partner with the exclusive right of possession and management of the whole partnership property and business, for the purpose of settling and closing the same. Parsons on Partnership, *440. Besides, the articles of copartnership provide that upon the dissolution of the firm the books shall be divided in the shares that they were contributed. Until the administrators made some effort for a division of the library, as contemplated in the articles of copartnership, it is not equitable that the plaintiffs should be charged with rent therefor.

XIV. The court rendered a judgment against the plaint-

iffs jointly. They complain that the court did not determine
8. ——: ——: the state of the account between each of the
form of judg-
ment. plaintiffs respectively and the defendants. The
petition prays that the court order that an account be taken
of the partnership dealings between plaintiffs respectively
and J. G. Patterson, deceased. The court found the amounts
respectively received by each of the plaintiffs before the death
of Mr. Patterson, but charged the amounts received by the
surviving partners since the death of Patterson to them
jointly, and rendered a joint judgment against them. These
sums should have been charged to Starr and Harrison respec-
tively in the proportion of seven to five, and a separate ac-
count should be stated between each of the plaintiffs and the
estate, and separate judgments rendered.

XV. The firm of Starr, Patterson & Harrison prosecu-
ted an action in favor of Roanna Whitcomb v. Abel Whit-
comb, to set aside a divorce alleged to have been fraudulently
obtained by him, and procured a decree setting aside the di-
vorce, and for $2,200 alimony. Thereupon, Starr, Patterson
& Harrison commenced an action in favor of Roanna Whit-
comb against Abel Whitcomb and one Moses to subject cer-
tain real estate to the payment of the decree, and obtained a
decree as prayed, when Mr. Patterson died. The defendants
appealed to the Supreme Court, and Starr & Harrison at-
tended to the case on appeal, and procured an affirmance of
the decree. Afterward, they caused the land, consisting of
120 acres, to be sold, and bid it in, in their own name, for
$1,560. At the time of the death of Patterson, Starr, Pat-
terson & Harrison had a balance of account against Mrs.
Whitcomb amounting to $1,378.86. Starr & Harrison have
an account against Mrs. Whitcomb for services in attending
the appeal and for money expended on her account, amounting
to $922.35. On the 17th day of December, 1878, Starr &
Harrison, as surviving partners, filed an attorney's lien on
the judgment in favor of Mrs. Whitcomb in favor of Starr,
Patterson & Harrison, and also an attorney's lien in favor of

Starr & Harrison.   At this time the account in favor of Starr
& Harrison against Mrs. Whitcomb amounted to $9.46.   In
apportioning the proceeds of the sale of the lands, the court
found that Starr, Patterson & Harrison were entitled to
$1,047.80 thereof.

The defendants insist that the land was worth $3,000,
and Starr, Patterson & Harrison should be credited with the
value of the land, less a small sum to be allowed upon the
account of Starr & Harrison, instead of the sum for which
the land was purchased.

A sufficient answer to this position is that the defendants
in their answer do not claim the land, but simply an account-
ing for the amount realized on the sale thereof.   The plaint-
iffs do not complain of the disposition of the claim by the
court.

XVI.   The plaintiffs complain of the taxation of costs.
The court taxed the witness fees and costs of the plaintiffs to
the defendants, and those of the defendants to the plaintiffs,
and of the other costs, two-thirds to plaintiffs and
one-third to defendants.   It is claimed that this
taxation is inequitable, because the defendants introduced an
unnecessary number of witnesses.   Without inquiry into this
position, we think it is more equitable to require each party
to pay the fees and costs of his own witnesses.   The remain-
ing costs will be divided between the parties in the propor-
tion of their respective interests in the firm.   The costs in
this court will be divided in the same proportion, except for
the amended abstract of appellees, which will be taxed to the
appellees.   The cause will be remanded for a decree in har-
mony with this opinion.

9. ——; ·——; apportion-
ment of costs.

REVERSED.