THOS. J. VAN AKEN *et al.*, Appellants, v. E. CLARK
*et al.*, Appellees.

1. **Estates of Decedents:** CONTRACTS FOR CONVEYANCE OF REAL
   ESTATE: PERFORMANCE BY EXECUTOR. A member of a copartner-
   ship verbally agreed to sell his interest in the partnership property
   consisting of certain real estate to his copartners for two thousand
   dollars, and the assumption by the other partners of the indebted-
   ness of the firm; under this agreement he received the sum named,
   and was released by his copartners from all liability upon the
   indebtedness of the firm, and from that time ceased to have any
   interest in the property in question, but up to the time of his
   death, several years after the above transaction, no conveyance
   of his interest had been made, nor any formal settlement of the
   partnership affairs. *Held*, that, upon a report of the above facts
   by a special administrator of such partner's estate, that the court
   was authorized in ordering that a proper release of such partner's
   apparent interest in said real estate be made to his copartners.

2. ——: ——: ——: RIGHTS OF HEIRS: NOTICE. Proceedings
   to compel a conveyance under such circumstances are governed by
   sections 2487 and 2488 of the Code of 1873, and the heirs are not
   necessary parties thereto. The above provisions of the Code are
   not unconstitutional as permitting one to be deprived of his property
   without due process of law.

3. ——: PARTNERSHIP REAL ESTATE: DISPOSED OF AS PERSONAL
   PROPERTY. Real estate held by a copartnership is treated as per-
   sonal property, and, in the event of the death of one of the part-
   ners, his interest in such real estate does not vest in his heirs, but
   is subject to the control and disposition made thereof by the sur-
   viving partners the same as personal property in the settlement of
   the partnership affairs, and the heirs are not necessary parties to
   proceedings instituted by the executor for the disposition of the
   deceased partner's interest in such real estate to the surviving
   members of the firm; and if they permit the executor to be
   discharged without contesting the validity of his action, they
   cannot afterwards, in the absence of fraud or mistake, attack the
   settlement in a collateral proceeding.

*Appeal from Johnson District Court.*—HON. S. H.
FAIRALL, Judge.

SATURDAY, FEBRUARY 7, 1891.

ACTION in equity to set aside a conveyance of real
estate and the order of court by virtue of which it is
made. A demurrer to the petition was sustained, and,

the plaintiffs refusing to further plead, judgment was rendered in favor of the defendants for costs. The plaintiffs appeal.—*Affirmed.*

*Ranck & Wade,* for appellants.

*A. E. Swisher* and *Joe A. Edwards,* for appellees.

ROBINSON, J.—The material facts shown by the pleadings are substantially as follows: Thomas Hill died testate in the year 1885. By his will he devised and bequeathed all his property to his wife, Eliza D. Hill. Mrs. Hill died intestate in the year 1886, leaving the plaintiffs and others as heirs. John N. Coldren qualified as executor of the estate of Thomas Hill, and entered upon the discharge of the duties of the office about the eighteenth day of February, 1888. On the third day of the next month he filed an application for the appointment of a special administrator. The grounds alleged for the application were that during the lifetime of the testator he was a member of a copartnership composed of himself, Ezekiel Clark and the applicant Coldren; that the copartnership was known as the Iowa City Bank, and commenced business in 1875; that Clark owned one-half of the bank, and each of the other partners one-fourth; that the assets of the bank consisted of moneys and credits and certain real estate in Iowa City, for which the firm was indebted in a large amount; that in December, 1882, Hill checked out all his money in the business of the firm, and withdrew from the firm, relinquishing all his interest in its property, the remaining partners agreeing to pay all its outstanding obligations; that no formal settlement or release in writing was made by the parties; that to prevent claims being made by persons not acquainted with the facts, and to close the business of the copartnership in due form, and save the expense of litigation, the appointment of a special administrator was asked to investigate, settle and close all unsettled matters, if any, of the Iowa City Bank; and such orders

as should be necessary for the protection of the estate of Thomas Hill were also asked. The application was granted, and G. W. Koontz was appointed and qualified as special administrator.

In May, 1888, Koontz filed a report which showed the following: Originally the partnership existed between E. Clark and Thomas Hill only. They acquired the title to lot 4, block 82, in Iowa City, at different times, and of different parties, a part of the title being in the name of Thomas Hill and a part in the name of E. Clark and Thomas Hill. The original consideration paid for all the property was eighteen thousand, six hundred and ninety-two dollars. Of that amount Clark paid fourteen thousand, eight hundred and ninety-two dollars and Hill eighteen hundred dollars. In 1875 the Iowa City Bank, a copartnership, was organized. The capital stock of the bank was twenty thousand dollars, of which Clark paid one-half, Hill one-fourth and Coldren one-fourth; and the interest of each partner was in proportion to the amount he so paid. The bank ceased to do business in 1882. In 1880, Clark and Hill conveyed the title to the lot aforesaid to the copartnership, the Iowa City Bank. At that time there was an indebtedness created in erecting buildings on the lot to the amount of fifty-two thousand, five hundred and forty dollars. The entire expense of the buildings known as the "Opera-House block" had been advanced by the bank. None of the personal funds of the partners were used in constructing the block. In 1882 the Iowa City Bank closed its business, and the Iowa City National Bank was organized. Hill withdrew his interest from the Iowa City Bank, and invested it in stock in the Iowa City National Bank. The old bank transferred to the new a part of the Opera-House block, the safes, fixtures and good will of the old bank, for thirty-five thousand dollars. That amount was applied upon the indebtedness existing for constructing the building, leaving still due an indebtedness of twenty-eight thousand, nine hundred and eighty dollars, which included the remainder of the cost of

construction, and all additional improvements to that date. Immediately after these transactions occurred, Hill, for the purpose of taking additional stock in the national bank, proposed to Clark and Coldren to sell all his interest in lot 4, block 82, to them for the sum of two thousand dollars, on condition that they should assume the indebtedness aforesaid. The proposition was accepted, and the price asked was paid. The indebtedness was assumed by Clark and Coldren. Hill was released from liability therefor, and from that time ceased to have any interest in the property described. The agreements between Hill, Clark and Coldren were. verbal. When Hill died the debt which Clark and Coldren had assumed amounted to thirty thousand, six hundred and six dollars. The special administrator recommended that the agreements of Hill, Clark and Coldren be ratified, and that a release to Clark and Coldren, which should recognize the assumption by them of the construction debt, be executed for the apparent interest which Hill had in the property of the copartnership at the time of his death. The report was approved, and a release was ordered and made by the special administrator, as he had recommended. The property described in the release was all the assets of the Iowa City Bank, and all the interest Thomas Hill had in lot 4, in block 82, Iowa City. Coldren made his final report as executor in June, 1888.

The petition in this case alleges that the application of the executor for the appointment of a special administrator, its approval, the order for and execution of the release, were all made without notice to or the knowledge of the plaintiffs ; that there never was in fact any sale made of the property of Thomas Hill, nor of his interest in the property of the Iowa City Bank ; that there was never any transfer or release of title from Hill to Clark and Coldren ; that it was not necessary to sell the interest of Hill in the property described to pay the debts of the partnership, nor to pay the debts of Hill ; that the value of the interest of Hill in said property greatly exceeded the amount alleged to have been paid

therefor. The petition also alleges as a separate cause of action that Thomas Hill owned an interest in the Iowa City Bank; that said bank was the grantee and owner of lot 4, in block 82, Iowa City; that a portion of said property was sold to the Iowa City National Bank, but that the part retained is yielding a large revenue; that it is in the possession of Clark and Coldren, who have made no accounting for the rents and profits received. The plaintiffs allege that, as heirs of Eliza D. Hill, they have an interest in the property in controversy, and in the profits thereof; that the proceedings for the release of the interest of Hill were illegal for want of notice to them. They ask that the order approving the report of the special administrator and directing the execution of the release, and the release as executed, be set aside; that the partnership matters of Hill and defendants be closed and settled; that an accounting be had, the interest of Hill ascertained, and the property of the copartnership distributed. By an amendment to the petition C. S. Welch, administrator of the estate of Eliza D. Hill, was made a party plaintiff. The defendants are E. Clark and J. N. Coldren. The grounds of the demurrer are that the facts stated in the petition do not entitle the plaintiffs to the relief demanded.

I. The averments of the petition in regard to the condition of the Iowa City Bank and the interest of

1. ESTATES of decedents: contracts for conveyance of real estate: performance by executor.

Hill therein at the time of his death are not very full and clear, but we think it may fairly be inferred from the language that it is the claim of plaintiffs that at the time of the death of Hill there had been no dissolution of the firm known as the "Iowa City Bank," as originally organized, and no sale of the interest of Hill to his copartners, no division of assets or assumption of liabilities, and no final settlement; that the interest of Hill in the Opera-House block, subject only to the sale of a portion thereof to the Iowa City National Bank, was held by Hill at the time of his death; that it was not necessary to sell that interest to pay the partnership

debts, nor to pay the debts of Hill ; that the title
thereto vested in Eliza D. Hill, by virtue of the will of
her husband, and, upon her death, became vested in
her heirs, subject only to the right of the defendants
to subject it so far as necessary to pay the partnership
debts, and the rights of the executor of the estate of
Hill and the administrator of the estate of his devisee to
subject it to the payment of debts against those estates.
In other words, the plaintiffs claim that on the death of
Mrs. Hill the title to an interest in the Opera-House
block became vested in them, subject to being divested
for the purposes stated, and that such title could not
be divested by proceedings to which they were not
parties.

The pleadings show that the district court, on the
report of the special administrator, found that Hill had,
in fact, sold his interest in the property of the firm to
the defendants, and that they had assumed to pay cer-
tain indebtedness, but that the agreements of sale and
to assume the indebtedness were verbal. Conceding
that the facts were as found, the court had ample
power to direct the execution of a release, and to
authorize the execution of such papers as would show
that the affairs of the copartnership were fully settled,
and that the estate of Hill was not liable for any of the
partnership debts. Such an exercise of judicial power
was demanded by the interests of the estate of Hill and
of the defendants.

II. But it is said that appellants had an apparent,
if not a real, interest in the Opera-House block, and
that the court could not legally determine
2. ‾‾:‾‾:‾‾: what their interest was in a proceeding to
rights of heirs:
notice. which they were not parties. If the finding
of the court were correct, the order it made in effect
directed the special administrator to fully perform an
agreement made by Hill to sell and convey real estate.
He had received the consideration of the conveyance
and had surrendered possession of the real estate, but
had not executed the conveyance which defendants
had a right to demand. The case is thus brought

within the provisions of sections 2487 and 2488 of the Code, which are as follows:

" Sec. 2487.   When a person under such obligation to convey real estate as might have been enforced against him, if living, dies before making such conveyance, the court may enforce a specific performance of such contract by the executor, and require him to execute the conveyance accordingly.

"Sec. 2488.   It is not necessary to make any other than the executor party defendant to such proceedings in the first instance; but the court, in its discretion, may direct other persons interested to be made parties, and may cause them to be notified thereof in such manner as the court may deem expedient.   Heirs and devisees may, on their own motion, at any time be made defendants."

It is said that, so far as these sections authorize the conveyance of property without notice to the heirs of an intestate, they are unconstitutional, as seeking to deprive a person of his property without due process of law.   It is true, as a general rule, that the title to the real property of one who dies intestate vests immediately in his heirs, and not in the administrator of his estate.   But the descent of real property is regulated by statute; and it is competent for the legislative power to impose upon property inherited such conditions as it shall deem proper to enact.   In this case the sections of the Code under consideration were in force when Hill died.   The alleged interests of plaintiffs were acquired subject to their provisions.   They provided a method for securing a conveyance, which the defendants were entitled to adopt.   The plaintiffs were not deprived of their right to appear and contest the claims of the defendants, but were required to take notice of the proceedings, and appear and contest such claims and the right of the executor to execute a conveyance, or thereafter remain silent.   We are of the opinion that the sections in question are not unconstitutional, as applied to the facts in this case.   *Mining Ass'n v. Reed*, 80 Pa. St. 38.   No fraud on the part of anyone is suggested,

and no sufficient excuse for the failure of the plaintiffs
to appear in the proceedings instituted by the executor
of Hill is shown.

III.   The petition alleges that there never was in
fact any sale made by Hill of the property in contro-
versy, and the demurrer admits that alle-
gation to be true.   If there had been no
agreement to sell, and if there was no obli-
gation to convey, the property, sections
2487 and 2488 of the Code did not apply.   Assuming
that such was the case, and that so far as the proceed-
ings in question depend upon the provisions of those
sections, they are without validity, what are the rights
of the plaintiffs?

8. ——: partner-
ship real estate:
disposed of as
personal prop-
erty.

As already stated, the petition, fairly interpreted,
shows that the firm of which Hill was a member had not
been dissolved at the time of his death; its affairs had
not been settled; its debts were unpaid, and its assets
had not been distributed.   The real estate, which is the
chief subject of controversy, was procured with partner-
ship assets for the use of the firm in the prosecution of
its business.   It was held and used for that purpose,
and was in all respects treated as partnership stock.
That such was the intention of the firm in procuring it
is shown in part by the fact that the title thereto was
taken in the firm-name.   It is the general rule,
which has been frequently approved by this court,
that in equity real property owned by a partnership
will be treated as personalty, subject to the rules which
usually govern that species of property.   *Paige v.
Paige*, 71 Iowa, 318; *Hewitt v. Rankin*, 41 Iowa, 35;
*Evans v. Hawley*, 35 Iowa, 83; 1 Lindley, Part., star p.
331, and notes; Parsons, Prin. Part., sec. 109, and notes;
Parsons, Part. 371.

But the death of Hill operated to dissolve the part-
nership.   What effect did the dissolution have upon
the title to the real estate?   It was impressed with the
character of personalty for the purposes of the partner-
ship, and the appellants contend that it ceased to have
that character when the partnership was dissolved.   It

was said in *Allen v. Withrow*, 110 U. S. 119; 3 Sup. Ct. Rep. 517, that "real property owned by a partnership and purchased with partnership funds is, for the purpose of settling the debts of the partnership and distributing its effects, treated in equity as personal property." In *Hoyt v. Hoyt*, 69 Iowa, 174, it was said: "Real estate which belongs to a partnership is subject to all the incidents of personal property. * * * None of the partners can be said to have any interest or right in it while the partnership continues. The claim of the partner is to such portion of the residue of the property as shall be found to be due him upon the final balance of the accounts of the firm after the conversion of the assets and the liquidation of the debts." In *Walling v. Burgess*, 22 N. E. Rep. (Ind.) 419, the sale of partnership real estate by a surviving partner to pay debts of the firm was sustained. The ground of the decision seems to be that the realty of a partnership must be treated as personalty so long as it is required for the payment of partnership debts. That doctrine was approved in *Leaf's Appeal*, 105 Pa. St. 505. See, also, *Lang's Heirs v. Waring*, 69 Amer. Dec. 533; *Huston v. Neil*, 41 Ind. 504. When a partnership is dissolved by the death of a member the survivor at once becomes invested with the exclusive right to the possession and control of the personal property of the firm. *Starr v. Case*, 59 Iowa, 491; Parsons, Part. 440; 1 Lindley, Part., star p. 342, note 1. He has that right for the purpose of settling and closing the partnership business. It may be as important that he have possession of the real property of the firm also, and the right to use it for the same purpose; and we do not think that heirs of the deceased partner should be permitted to interfere with such possession and use where such interference would not be authorized in the case of personal property. In other words, the surviving partner is entitled to the possession of, and to control and use, both the real and personal property of the firm so long as it is required to settle and close its business; and until the business is closed the realty will be

treated in equity as personal property. In this case, if the averments of the petition be true, the business of the Iowa City Bank was unsettled when Hill died, and it was unsettled when the proceedings in controversy were instituted and carried on. The defendants, as surviving partners, were entitled to the possession of the property in controversy. Application was made to the court having jurisdiction of such matters for such relief as would authorize the settlement of the estate of Hill, and to accomplish that end it was necessary to settle the partnership matters in which the estate was interested. On the facts, as found by that court, the relief granted was authorized. It is not attacked for fraud or mistake, but on the ground that the findings upon which it was based were erroneous, and that it was granted without notice to the heirs of Mrs. Hill. But until the estate of Thomas Hill is settled they are not entitled to any of the personal property which belonged to it. Until that time the executor of that estate is entitled to it.

It appears that the executor has made his final report, but it is not shown that he has been discharged. Before he was entitled to a discharge he was required to give notice of his application for that purpose. *Van Aken v. Coldren,* 80 Iowa, 254. From the similarity of names and facts stated in the case cited it may be inferred that the report of the executor was approved, and that he was discharged; but, if that be the case, the order affirming the report as final, under the facts stated in the petition in this case, was improperly granted, and parties adversely interested should have made known their objections at the time and in the manner provided by statute. See Code, secs. 2474, 2475; *Van Akin v. Welch,* 80 Iowa, 114. We must presume, in the absence of a showing to the contrary, that they had due notice of the application of the executor for a discharge. But it appears that the interest of the estate of Thomas Hill in the partnership business of the Iowa City Bank was, in fact, settled. It was the duty of the executor to procure a settlement of that

kind, and the petition shows how it was accomplished. It resulted in absorbing all the interest of the estate in the realty in controversy. Since that was required as to the estate of Hill, it retained its character of personal property to the end that the estate never became entitled to it as realty, and that the title thereto was never vested in the heirs of Mrs. Hill. They have failed to show themselves entitled to interfere with the settlement, or to avoid the execution of the release.

The conclusions announced dispose of all questions in the case which we are required to consider. The judgment of the district court is AFFIRMED.