FIDELITY & CASUALTY COMPANY of New York, Appellant, v. BANK OF PLYMOUTH et al., Appellees.

No. 42156.

JUNE 23, 1934.

REHEARING DENIED DECEMBER 13, 1934.

See, also, 213 Iowa 1058, 237 N. W. 234.

F. A. Ontjes, for appellant.

Smith & Feeney, for appellee J. C. Williams.

Senneff, Bliss & Senneff, for appellees Gertrude B. Huntley, Oscar Field, Martin Field, Carl Field, Peter Field, and Ole Fjelde.

MITCHELL, J.—R. Valentine and F. G. Ehlers were partners, carrying on a banking business at Plymouth under the name of Ehlers & Co., sometimes referred to as the Bank of Plymouth. Funds of the F. J. Langshadl estate and the Mary Langshadl estate were deposited and kept on deposit in said bank. F. G. Ehlers was administrator with the will annexed of the estate of F. J. Langshadl, whose will bequeathed one-half of his moneys and credits to Mary Langshadl. Mary Langshadl then died testate, and her legatees were entitled to one-half the funds of the F. J. Langshadl estate, and the funds of the Mary Langshadl estate deposited in said bank. H. J. Ehlers was administrator with the will annexed of the Mary Langshadl estate, and the Fidelity & Casualty Company, a surety company, signed and guaranteed the bond of the said H. J. Ehlers in the Mary Langshadl estate, in the amount of $18,000. The Bank of Plymouth failed on November 17, 1925. The legatees of the Mary Langshadl estate brought action against H. J. Ehlers to recover the deposit of the Mary Langshadl estate in the Bank of Plymouth, which at that time amounted to $11,421.74 and interest thereon. The court ordered H. J. Ehlers, the administrator, to pay the same, and provided in said order and decree that if he

paid the same he would be subrogated to all the rights of said estate and of said legatees to prosecute said claim against the receiver of the Bank of Plymouth or against other persons liable to them or to said estate; and that in case he failed to pay over said money and funds, and the surety, to wit, the Fidelity & Casualty Company, on his administrator's bond, paid the same, the surety would be subrogated to all his rights. H. J. Ehlers failed to make payment, and the Fidelity & Casualty Company, surety on his bond, was required to pay the same.

On the 18th day of November, 1929, the Fidelity & Casualty Company commenced this action in equity, aided by an attachment, to recover against R. Valentine judgment for the amount of the deposit of the Mary Langshadl estate in the Bank of Plymouth, plus interest, asking that it be subrogated to the rights of the estate of Mary Langshadl and of the legatees thereof to recover the same, also praying that it be decreed that Gertrude B. Huntley was holding title to a certain quarter section of land in trust and that the conveyance of said land from Valentine to Gertrude B. Huntley be decreed to be void, and that a writ of attachment issue. On the 14th day of April, 1930, while the relief prayed for by the Fidelity & Casualty Company only involved a quarter section of land, Gertrude B. Huntley, one of the defendants, filed an answer, in which she denied all of the allegations set out in the surety company's petition, and in one division alleged that Valentine had sold his interest in the Bank of Plymouth on July 15, 1924, and that H. J. Ehlers, the administrator of the Mary Langshadl estate, had full knowledge of the sale; that the liability of Valentine had terminated and that the right of subrogation of the surety company was based upon the rights of H. J. Ehlers, who had full and complete knowledge at the time he qualified as administrator, that Valentine was no longer connected with the bank, and that before the conveyance to Gertrude B. Huntley of the quarter section of land could be assailed, the surety company must establish a valid claim against Valentine, and that it had none. In division 2 of the answer the defendant Huntley denied the conveyance of the quarter section of land was fraudulent. On the 26th day of September, 1930, the appellant filed a substituted petition, in which it charged that lot 2, block 9, Paul Felt's addition to Mason City, Iowa, had been by Valentine fraudulently conveyed to Gertrude B. Huntley and that Gertrude B. Huntley had fraudulently conveyed

the Mason City property to J. C. Williams. In the substituted petition, Fidelity & Casualty Company alleged that Gertrude B. Huntley received $19,000 from Williams for the conveyance, and that she should be held to account to the surety company as trustee for said proceeds, and that it have personal judgment against her therefor. On the 6th day of January, 1931, the appellee Gertrude B. Huntley filed a special appearance, in which she alleged she was a nonresident of Iowa and had been served in California, and that she had entered her appearance and filed answer to the original petition, which was an action in rem, and was entitled to try that issue, and that the court had no jurisdiction to try an accounting suit or hold her liable as trustee. To this special appearance, resistance was filed, and a response to such resistance was filed by Gertrude B. Huntley. The district court of Cerro Gordo county, Iowa, on the 18th day of February, 1931, sustained the special appearance of Gertrude B. Huntley, and from the said ruling, sustaining the special appearance, the Fidelity & Casualty Company appealed to this court. This court on June 20, 1931, affirmed the ruling of the lower court. Fidelity & Casualty Co. v. Bank of Plymouth, 213 Iowa 1058, 237 N. W. 234.

Thereafter, on April 30, 1931, the appellee J. C. Williams filed his answer, which consisted of a general denial, and denied any fraud. On July 1, 1932, Gertrude B. Huntley asked leave of court to file an amendment to her previous answer, and the court granted her permission to do so. Thereafter the case proceeded to trial, evidence was offered, and the court found for the appellees, discharged the attachment, and entered judgment against the appellant for costs.

The Fidelity & Casualty Company, being dissatisfied with the finding and decree of the lower court, has appealed to this court.

▮ Before the appellant can successfully assail any transfer from Valentine to Huntley, it must establish that Valentine was in truth indebted to it at the time the transfer was made, for, if the appellant had no valid claim against Valentine, then it would not be in a position to assail any conveyance made by him. And so we must turn to the record to ascertain whether or not the appellant is entitled to a judgment as against Valentine.

The Bank of Plymouth was a private bank, organized some years ago. There were various changes in the ownership of said bank, but for some years prior to July 5, 1924, it was owned by a

partnership consisting of F. G. Ehlers and R. Valentine. A son of F. G. Ehlers, referred to in the record as H. J. Ehlers, sometimes as Harry Ehlers, was for several years prior to July 15, 1924, cashier of said bank. The bank was engaged in the general banking business, receiving and accepting deposits from all that desired to intrust their funds to the bank. Valentine lived at Mason City and at different times during the year would visit the Bank at Plymouth and go over the affairs of the institution. In 1917 Valentine moved to California and has resided there ever since, although at times he would make trips back to Iowa to look after his property, including his interest in the Bank of Plymouth. During that period of time he took no active interest in the affairs of the bank and the management was entirely in the hands of his partner and the son of the partner. The bank during these years was a profitable institution, paying substantial dividends to the respective partners.

In 1903 F. J. Langshadl died testate, leaving to his wife, Mary Langshadl, one-half of all of his money and credits and all his real estate and personal property, also the interest and profit of the other half of the money and credits during her life. F. G. Ehlers was appointed administrator with the will annexed of the estate of F. J. Langshadl, and R. Valentine was one of the sureties on his administrator's bond. Notice of the appointment was given, as by law provided. All the claims were paid against the estate, including court costs. And on the 25th day of March, 1917, the administrator had on hand the sum of $8,480.

Mary Langshadl died April 12, 1922, leaving a will, giving a legacy of $500 to her nephew, John Boehm, and a legacy of $150 to the Cemetery Association, and the balance to be divided equally among the children of her brothers and sisters. Her will was admitted to probate in May of 1922, and H. J. Ehlers, a son of F. G. Ehlers, was appointed as administrator with the will annexed, on February 14, 1923. Ehlers did nothing to qualify as administrator with the will annexed of the Mary Langshadl estate until October 31, 1925, although it does appear in the record he drew checks on the Mary Langshadl estate account to pay certain claims and collected money and deposited it to the credit of Mary Langshadl estate account, in the Bank of Plymouth. The bond which H. J. Ehlers executed as administrator of the estate of Mary Langshadl, deceased, was signed by the appellant company, as surety.

On April 9, 1923, there was a balance of $8,773.44 in the account standing in the name of F. J. Langshadl estate. On January 7, 1924, there had been collected and deposited in the account of the Mary Langshadl estate, after paying certain claims and making disbursements, the sum of $6,865. On February 13, 1925, the Mary Langshadl estate account was credited with one-half of the F. J. Langshadl estate account, and the F. J. Langshadl estate account was debited the same item. Both of these entries were made by H. J. Ehlers. The record shows that R. Valentine had no knowledge of the amount of money deposited in the Mary Langshadl estate, and did not in any way participate in the handling of the money and had no idea what parties had any interest in said estate.

In July of 1924 Valentine was 74 years of age. He was at that time, and had been for some years past, living in the state of California. All he knew about the affairs of the bank was what he had gathered from correspondence with his partner, from an inspection of the statements of the bank, and whatever information he received on his visits back to Iowa and to the Bank of Plymouth, which he made at various times during the period he lived in California. He returned to Mason City in the summer of 1924. He was desirous of selling his interest in the bank. At that time, namely, in July of 1924, the Bank of Plymouth appeared to be in good financial condition. It had plenty of cash on hand and had no borrowed money. Valentine and his partner, F. G. Ehlers, and F. G. Ehlers' son, H. J. Ehlers, who was the administrator of the Mary Langshadl estate, on the 15th day of July, 1924, went to the office of Mr. Boomhower, an attorney in Mason City, Iowa, and in the presence of Mr. Boomhower and of H. J. Ehlers, Mr. Valentine sold his interest in the Bank of Plymouth for the sum of $2,500. F. G. Ehlers gave to R. Valentine his check in the amount of $2,500 in payment of Mr. Valentine's interest in the bank. The record shows that at the time the transaction was made, both Valentine and his partner, F. G. Ehlers, believed the bank to be a valuable asset. Not only did Valentine, his partner, F. G. Ehlers, and the cashier of the bank, H. J. Ehlers, testify to what took place, but Mr. Boomhower—not in any way connected with the case—verifies the statements of Valentine and Ehlers. Boomhower prepared certain deeds and other papers, which papers were signed by Valentine and delivered to Ehlers. There is no question in the record that Valentine disposed of his entire interest in the Bank of Plymouth on

July 15, 1924, and that H. J. Ehlers, the administrator of the estate of Mary Langshadl, knew about the transaction.' All of Valentine's interest in the assets of the bank was transferred, and this was known to H. J. Ehlers.

In addition to the evidence covering the transaction of July 15, 1924, the record also shows that H. J. Ehlers prepared certain statements of the bank, in which he listed the parties interested. Statement of March, 1924, prepared by H. J. Ehlers, showed that Valentine was listed as being the holder of a $2,500 interest in the Bank of Plymouth. On April 4, 1925, a year later, H. J. Ehlers made a sworn statement of the record of the bank, and in this statement R. Valentine is not listed as one of the parties owning any interest in said bank.

The record clearly shows that on July 15, 1924, there were ample funds in cash in the Bank of Plymouth to pay the Mary Langshadl estate account in full. From July 15, 1924, when Valentine sold his interest in the bank, until the bank closed in November of 1925, H. J. Ehlers at all times knew that Valentine had no interest in the bank.

The City Commercial Savings Bank of Mason City, which was the depository of the Plymouth Bank, closed in May of 1925, or nearly a year after Valentine sold his interest in the Bank of Plymouth. This Mason City Bank was the sole correspondent of the Plymouth Bank. At the time the City Commercial Savings Bank closed, the Bank of Plymouth had on deposit with it a sum in excess of $7,000. The closing of the Mason City Bank, of course, imperiled the Plymouth Bank, and the Bank of Plymouth closed in November of 1925.

When the Bank of Plymouth closed, Ehlers, the administrator of the Mary Langshadl estate, was unable to make settlement with the heirs because he had deposited, or left on deposit, the funds with the Bank of Plymouth, and the appellant was called on to make good, not for the bank—as it was not a depository bond—but was called on to make good for H. J. Ehlers on his administrator's bond. And it now takes the position that it can recover from Valentine the amount it paid the Langshadl heirs when Ehlers failed to do so.

The appellant claims that the lower court erred in not entering a judgment against Valentine, who made no defense, and that, since Valentine made no defense, the appellant is entitled to

judgment against him because Valentine was in default. But the record shows that Gertrude B. Huntley, whom the appellant claims was a fraudulent grantee, interposed a defense. She had a right to interpose any defense to a creditor's claim that the alleged debtor could interpose, and if the defense is successfuly made, then the creditor has no right to assail the conveyance. This is the rule laid down in 27 C. J. 578, section 645: "Where a party claiming to be a creditor attacks a conveyance by the alleged debtor as in fraud of his rights, the primary fact to be established is the existence of the debt to which the property conveyed would be subject if the conveyance did not stand in the way, obstructing legal remedies to reach it, and the demand of the creditor must be subject to examination in order to see whether he has a right as such to question the validity of the conveyance. Parties claiming under the conveyance have not only the right to require proof of the debt, but the grantee in a conveyance attacked as fraudulent is entitled to set up any defenses not merely personal that the grantor might have invoked in a direct suit against him on the claim, as that the cause of action has been extinguished by lapse of time, that the judgment where the claim has been reduced to judgment has been paid and therefore has ceased to be operative as a basis of a suit in equity, or that plaintiff is indebted on simple contract to the judgment debtor in an amount equal to the judgment."

The appellant in its argument sets out that no notice was given by R. Valentine of the sale of his interest in the partnership, to the depositors of the bank. In this the appellant is correct, except that the administrator of the Mary Langshadl estate had actual knowledge of the sale of Valentine's interest in the bank. On July 15, 1924, when Valentine sold his interest in the bank, if he had given notice to every creditor of the bank he could not have given notice to the Fidelity & Casualty Company, as it was a stranger; its bond had not been issued or filed. It was not necessary to give H. J. Ehlers notice of that which he already knew, and, if notice had been given, it would not have been necessary for Valentine to have given notice to strangers, nor to the heirs of Mary Langshadl, as the notice would of necessity have been to their representative, the only person who could have maintained an action for them.

In the case of In re Estate of Acken, 144 Iowa 519, 123 N. W. 187, 191 Ann. Cas. 1912A 1166, the court said, at page 530:

"It is not quite true, as appellant contends, that upon the death of one owning personal property this property immediately passes to his heirs. If there be no administration granted, and the time for the taking out thereof has expired, doubtless this is true, and it may be that for certain purposes, even with administration granted, the title passes to the heirs by relation or otherwise as of the date of the death of the owner. We have held that, until the estate is settled, the heirs are not entitled to any of the personal property belonging to the decedent. Van Aken v. Clark, 82 Iowa 256, 48 N. W. 73. Again, in Stahl v. Brown, 72 Iowa 720, 32 N. W. 105, we said:

" 'The heirs take no title or ownership of the personal property of the estate while it is subject to administration, but it descends to the administrator upon his appointment.'

"Following this rule to its logical conclusion we held in Haynes v. Harris, 33 Iowa 516, and Baird v. Brooks, 65 Iowa 40, 21 N. W. 163, that, where the period for granting letters had not expired, no action could be maintained by the heirs of the deceased upon a promissory note, the property of the deceased at the time of his death. In another case, where the period for granting letters had expired and the debts of the decedent had been paid, we held that the widow and heirs were entitled to maintain an action against another heir who had appropriated property of the deceased. See Murphy v. Murphy, 80 Iowa 740, 45 N. W. 914. It is well to notice the fact that in this case not only were there no debts, but that the time for administration had expired. See, also, as sustaining the same rule: Phinny v. Warren, 52 Iowa 332, 1 N. W. 522, 3 N. W. 157; Jordan v. Hunnell, 96 Iowa 334, 65 N. W. 302. Again, it was said in Ritchie v. Barnes, 114 Iowa 67, 86 N. W. 48, that 'the heirs are not entitled to possession of personal property until through distribution or the expiration of the period of limitation for administration their interest therein has been definitely ascertained.' "

It thus appears from the case cited that the only person with authority to act for the Mary Langshadl estate was the legal representative Ehlers, and he was fully conversant with the entire situation. When Valentine sold his interest in the bank and received therefor the sum of $2,500, Ehlers, the administrator of the Mary Langshadl estate, had actual knowledge of this fact and at that time there were ample funds to pay the Langshadl account.

It was within Ehlers' power to withdraw the money and deposit it in another institution. It was his duty so to do, if he knew the bank was insolvent, and as he was the cashier of the bank he knew and was charged with knowing more about the affairs of the Bank of Plymouth than anyone else. If he failed to perform his duty, his surety must suffer.

In a very similar case, the Michigan court, in the case of Gillett v. Ivory, reported in 173 Mich. 444, 139 N. W. 53, said at page 55:

"He (the plaintiff) could refuse to accept Hagle and Varran as his debtors in the place of defendants, or he could affirm the arrangement which he knew had been made between defendants and Hagle and Varran, and look to them to pay his deposit, instead of to defendants. It is clear he knew at that time that Hagle and Varran had undertaken to pay the depositors in the bank, for he testifies: 'I knew that he (defendant Ivory) had sold out, and that I could go and get my money if I wanted to. I didn't go and get it.'

"Of course, he could not get his money from Hagle and Varran (with whom prior to that time he had had no contract relations) upon any other theory than that they had as between themselves and defendants agreed to assume and pay the indebtedness of the old partnership. The fact, therefore (emphasized by plaintiff), that he was never told that Hagle and Varran had assumed the old indebtedness, becomes unimportant. Having knowledge of the sale and of the fact that as between themselves there had been a substitution of debtors, it would seem clear that plaintiff elected to accept Hagle and Varran as his debtors in the place and stead of the defendants, who were then bounden to him. This election is evidenced by the fact that he permitted his deposit to remain in the hands of Hagle and Varran for some months after he had knowledge of the sale by the fact that he knew he could get his money from them if he wanted to, and by the further fact that during those months he made no demand upon defendants for his money, though he knew that they had sold the bank and had retired from the business."

The appellant also argues, as one of the grounds for reversal, that the appellee Gertrude B. Huntley did not raise by proper pleading the issue of the want of partnership. Valentine, the alleged partner, filed no pleading. Code section 11208 provides that when a partnership is sued and one of the supposed partners makes

a defense on the ground that he was not a member of the partnership or that there was no partnership that included him, he must so specifically recite. This is upon the theory that the defense upon which he relies is peculiarly in his knowledge. It has no application to a situation such as we have in the instant case, where it is not claimed that Gertrude B. Huntley is a partner. But we are not confronted with that question in this case, because in her answer Gertrude B. Huntley specifically pleads that Valentine had sold his interest in the partnership and affirmatively denies his liability.

Thus, in the case at bar we find that the appellant's case is bottomed upon the theory that Valentine was a partner in the Bank of Plymouth. The record shows without any doubt that Valentine sold his interest in the Bank of Plymouth in July of 1924; that his connection with the bank ceased at that time; that for that interest he received the sum of $2,500. There is in the record not one single particle of evidence that casts any doubt upon the fairness and honesty of the transaction when Valentine sold his interest to Ehlers. The administrator of the Mary Langshadl estate, whose bond the appellant company wrote, was present at the time this transaction took place. He had actual knowledge of the sale by Valentine of his interest in the bank. It is true that Valentine gave no notice to the depositors, but, in the case of one having actual knowledge, such as Ehlers, the administrator of the Mary Langshadl estate, had, it would have been useless to have given notice, for he already had actual knowledge of the sale of Valentine's interest.

At the time that Ehlers, the administrator of the Mary Langshadl estate, knew that Valentine sold his interest, there was sufficient money in the Bank of Plymouth to pay out the entire amount which was owing to the Mary Langshadl estate. That condition prevailed for some time. The administrator of the estate saw fit not to withdraw the money. The administrator had knowledge of the affairs and conditions of the bank. It was his duty to have withdrawn the money. His failure to do that made the surety company liable. The surety company now is attempting to collect from Valentine the amount it was forced to pay through the failure of the person whose bond it wrote, to wit, Ehlers, the administrator of the Mary Langshadl estate, to perform his duty as administrator of said estate, alleging and claiming that Valentine was a partner in the Bank of Plymouth.

In view of the record made here, that Valentine sold his interest, that the administrator had actual knowledge, the lower court was right in finding and decreeing that Valentine was not liable to the appellant company.

Many other questions are raised. Able and elaborate arguments have been presented by both sides, but, in view of the fact that Valentine is not liable, it is not necessary to pass upon the other questions involved.

With the submission of this case there was submitted a motion to dismiss.

The motion to dismiss is overruled, and judgment and decree of the lower court must be, and it is hereby, affirmed.

CLAUSSEN, C. J., and EVANS, STEVENS, ALBERT, ANDERSON KINT-ZINGER, and DONEGAN. JJ., concur.