[Civil No. 1794.   Filed February 10, 1922.]

[204 Pac. 207.]

# VALLEY BANK, a Corporation, and VALLEY BANK ADJUSTMENT COMPANY, a Corporation, Appellants, v. WILLARD H. MALCOLM, Appellee.

1. JUDGMENT—JUDGMENT HELD ADMISSIBLE IN ACTION AGAINST TRANS-FEREE OF DEBTOR'S ASSETS.—In an action to recover from a bank, to which was transferred all the assets of another bank, the amount of a judgment against the latter, the judgment-roll is admissible to 'show that plaintiff was a creditor of the former, and, in the absence of fraud or collusion, is conclusive, not only on the parties to it, but on other creditors or transferees of the judgment debtor.

2. APPEAL AND ERROR—ERROR IN ADMISSION OF EVIDENCE FOR DEFEND-ANTS HARMLESS, WHERE COURT FOUND FOR PLAINTIFF.—In an action to recover the amount of a default judgment against bank from a bank to which its assets were transferred, the court erred in admitting evidence that the judgment was erroneous and that plaintiff had no cause of action, but the error was harmless, where the court found for plaintiff.

3. BANKS AND BANKING — TRANSFER OF ASSETS OF INSOLVENT BANK WITH CONSENT OF BANK COMPTROLLER AND ATTORNEY GENERAL HELD VALID.—Though the proceedings provided by Civil Code of 1913, paragraph 294, requiring the Attorney General, on notice from the bank comptroller of his having taken control of a bank and suspended its business, to commence suit to enjoin the trans-action of any further business by it, have precedence over all other methods of liquidating its affairs, a transfer of assets to another bank with the consent of the comptroller and Attorney General is not void; the latter not being compelled to sue if he believes the creditors' interests may be best subserved by a reorganization or transfer of assets to another institution.

4. STATUTES—MANDATORY LANGUAGE MAY BE CONSTRUED AS DIRECTORY. Language of a statute, however mandatory in form, may be deemed directory whenever the legislative purpose, in view of the good to be accomplished, can best be carried out by such construction.

5. CORPORATIONS — ASSETS CONSTITUTE TRUST FUND FOR BENEFIT OF CREDITORS.—The assets of a private corporation constitute a trust fund for the benefit of its creditors.

6. CORPORATIONS — WHEN ONE CORPORATION PURCHASING ASSETS OF
ANOTHER IS LIABLE FOR LATTER'S DEBTS STATED.—Though a corpo-
ration purchasing assets of another corporation does not thereby
assume the payment of any of the latter's debts, it is responsible
for them, whether contractual or arising out of tort, liquidated or
unliquidated, if the sale was without consideration, or in bad faith,
for the purpose of defeating creditors of the selling corporation,
or if there was a merger or consolidation, or if the purchasing
corporation took over all of the stock of the selling corporation,
or if the transaction amounted to a mere reincorporation or re-
organization of the latter corporation.

7. CORPORATIONS — CORPORATION PURCHASING ASSETS OF ANOTHER IN
GOOD FAITH FOR VALUE NOT LIABLE FOR LATTER'S DEBTS.—When
a sale of the assets of a corporation is a *bona fide* transaction,
through which vendor receives money to pay its debts, or property
equal to the fair value of the property conveyed by it, the pur-
chasing corporation will not, in the absence of a contract or sub-
stantial fraud, be held responsible for the liabilities of the selling
corporation.

8. BANKS AND BANKING—CREDITORS OF BANK MAY FOLLOW ITS ASSETS
IN HANDS OF PURCHASER.—The purchase by one bank of the assets
of another, in consideration of the assumption of debts substan-
tially equal to the value of the assets, does not subject the pur-
chasing corporation to liabilities of the selling corporation, but,
when the selling corporation, to the purchaser's knowledge, is left
entirely without assets, the purchaser takes the property subject
to an equitable lien in favor of creditors.

9. BANKS AND BANKING—CORPORATION HANDLING DOUBTFUL ASSETS OF
SELLING BANK HELD LIABLE FOR DEBTS NOT ASSUMED BY PUR-
CHASER TO EXTENT OF SUCH ASSETS.—A corporation organized to
handle doubtful assets of bank, the assets of which were purchased
by another bank and to reimburse the latter bank for the amount
of the former's indebtedness assumed by it, is responsible for debts
of the selling bank not assumed by the purchaser, to the extent of
the assets received from the latter.

10. CORPORATIONS—IN ABSENCE OF FRAUD, LIABILITY OF PURCHASER OF
CORPORATE ASSETS TO CREDITORS LIMITED TO VALUE OF ASSETS RE-
CEIVED.—The liability of a purchaser of corporate assets to credi-

6. On effect of consolidation, merger, or absorption of corpora-
tion on its unsecured liabilities, in absence of statutory or contract
provisions relative thereto, notes, 89 Am. St. Rep. 636; Ann. Cas.
1914C, 449; 11 L. R. A. (N. S.) 1119; 32 L. R. A. (N. S.) 616; 47
L. R. A. (N. S.) 1058.

10. Liability of corporation for debts of predecessor, notes, 59
Am. St. Rep. 550; 4 Ann. Cas. 260; Ann. Cas. 1913E, 1044; 15
A. L. R. 1112.

tors of the selling corporation, whose debts were not assumed by the purchaser, is limited to the value of the assets received by it, in the absence of actual fraud.

11. BANKS AND BANKING—ONE FRAUDULENTLY INDUCED TO BUY LAND FROM A BANK HELD A CREDITOR THEREOF, THOUGH JUDGMENT WAS NOT RECOVERED UNTIL AFTER TRANSFER OF BANK'S ASSETS.—One induced by fraudulent representations to purchase lands from a bank, which thereafter sold its assets to another bank, was a creditor of the former bank at the time of the transfer of its assets, though he did not recover a judgment until afterwards; his cause of action existing at all times after the consummation of the fraud.

12. FRAUDULENT CONVEYANCES — CREDITOR HAVING CAUSE OF ACTION FOR TORT MAY ATTACK FRAUDULENT TRANSFER INJURIOUSLY AFFECTING RIGHTS.—A creditor having a cause of action for tort may attack a fraudulent or unlawful transfer injuriously affecting his rights.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Reversed and remanded for new trial.

### STATEMENT OF FACTS.

For many years prior to November 9, 1914, the Valley Bank of Phoenix was a banking corporation carrying on a large business at Phoenix, Arizona. On that day the state auditor and bank comptroller took possession of its assets and property and closed its doors, and shortly thereafter reported his action to the Attorney General of the state. No further action was taken with respect to winding up the affairs of the bank by the state authorities, but the comptroller remained in possession until December 31, 1914. Negotiations were entered into looking to the organization of a new bank, and certain parties were interested who formed a banking corporation called the Valley Bank.

On the thirtieth day of December, 1914, the Valley Bank of Phoenix and the Valley Bank entered into a written agreement which set forth a resolution

adopted on the same day by the board of directors of the Valley Bank of Phoenix, reciting that—

"This corporation is financially embarrassed and at present unable to meet its obligations to its depositors and other creditors, and this board deems it necessary, in order to avoid loss and injury to its depositors and other creditors, that means be provided for the liquidation of its debts and obligations."

The resolution further recited that the Valley Bank had proposed and offered, in consideration of the transfer to it of all the assets and property of the Valley Bank of Phoenix, to pay off and liquidate all of the obligations of the latter bank as shown by its books and records, and accordingly it conveyed and transferred all of its assets and property to the Valley Bank, which in turn agreed to assume and pay all debts and obligations of the Valley Bank of Phoenix, as shown by its books and records.

This contract was carried out. All assets and property of the Valley Bank of Phoenix were transferred to the Valley Bank, and the latter institution thereupon commenced operations. Among the assets of the Valley Bank of Phoenix were securities amounting to the sum of $869,000 face value, which the Valley Bank declined to accept. An arrangement was thereupon entered into for the handling of these particular assets, and another corporation, called the Valley Bank Adjustment Company, was organized for the purpose of handling and reducing to money the $869,000 of assets. These securities were thereupon transferred to the Valley Bank Adjustment Company for a consideration of $562,000. The capital stock of the Valley Bank Adjustment Company was in two classes, $200,000 in preferred stock, which was subscribed for by depositors in the Valley Bank of Phoenix and paid for by checks drawn on their deposits; the subscriptions amounting to twenty-five per cent of their several deposits. The common stock,

amounting to $150,000, was subscribed for by the directors of the Valley Bank of Phoenix, and promissory notes to that amount executed by the subscribers were turned over to the Valley Bank as a payment *pro tanto* on the purchase price of the assets received by the Valley Bank Adjustment Company. For the balance, $212,000, the adjustment company gave its note to the Valley Bank, secured by a pledge of the assets which it had received. The adjustment company thereupon entered upon the handling of these assets which had been transferred to it by the Valley Bank, and is still engaged in an effort to realize as much upon them as may be possible.

On the seventh day of August, 1915, appellee, Malcolm, commenced an action against the Valley Bank of Phoenix, styled in the complaint "trustee." The defendant in that action failed to answer the complaint, and thereafter, on the sixteenth day of September, 1915, judgment was rendered in favor of the plaintiff in that action for the sum of $4,644.62, with costs.

The complaint in the action of Malcolm against Valley Bank of Phoenix set forth a cause of action based upon a contract made between the parties on January 27, 1913, by which the bank agreed to sell to Malcolm certain farming lands in Maricopa county for the sum of $7,200, alleging that he had been induced to make this contract by certain false and fraudulent representations of the Valley Bank of Phoenix; that he had paid the sum of $2,400 as part payment of the purchase price of the property and had made certain improvements upon the property. Malcolm sought to rescind the contract and recover from the bank the amount paid and the cost of the improvements. On this cause of action judgment was rendered, as before stated. The judgment not being paid, Malcolm brought this action against the Valley

Bank of Phoenix, Valley Bank, and Valley Bank Adjustment Company to recover the amount of the judgment in the former action against the Valley Bank of Phoenix. The trial court rendered judgment in favor of the plaintiff and against each of the defendants for the amount due under the former judgment, and from the judgment so rendered the Valley Bank and Valley Bank Adjustment Company prosecute this appeal.

Messrs. Kibbey, Bennett & Jenckes and Messrs. Gandy & Cunningham, for Appellants.

Mr. M. T. Phelps, Mr. R. E. Sloan, and Miss Alice M. Birdsall, for Appellee.

PATTEE, Superior Judge (After Stating the Facts as Above).—The complaint in this action contains four counts, based upon different theories of the rights of the plaintiff. It is first claimed that the indebtedness upon which judgment was recovered was an obligation appearing upon the books and records of the Valley Bank of Phoenix on December 31, 1914, and, by the terms of the contract transferring the assets of that corporation to the Valley Bank, was assumed and agreed to be paid by the latter bank. The court below so found, and it is assigned as error that such finding is wholly unsupported by the evidence.

Giving the evidence the most favorable interpretation in favor of appellee, there is nothing in it that would warrant the conclusion that the cause of action upon which Malcolm recovered his judgment was shown upon the books and records of the Valley Bank of Phoenix. The most that could be said is that the contract entered into with Malcolm for the purchase of the lands may have been among the records of the bank, but there is not a particle of evidence to indi-

cate that there was any record or any entry upon any of the books of the bank, or any documents in its possession, which would indicate that Malcolm had any cause of action for alleged false representations upon which he claimed to have relied in entering into the contract of purchase, or that any liability rested upon the bank by reason thereof. The finding is wholly without evidence to sustain it, and there is no evidence even tending to show that this was one of the debts or obligations assumed by the purchasing bank under the terms of the contract.

The fourth count of the complaint charges a conspiracy between the two banks and the adjustment company to defraud plaintiff and defeat the collection of his judgment, but no proof was made of any such situations, and the court below dismissed this count of the complaint without objection on the part of appellee.

The remaining counts are based upon the theory that the assets of the Valley Bank of Phoenix constituted a trust fund for the benefit of its creditors, and that upon the purchase of its assets by the Valley Bank it was left entirely without property out of which a judgment against it could be collected; that the purchasing bank took with notice of the insolvency of the Valley Bank of Phoenix, or the inability of that bank to pay its debts, and took the assets charged with a trust in favor of the creditors of the selling bank.

At the trial the court admitted in evidence, over the objection of the appealing defendants, the judgment-roll in the case of Malcolm against the Valley Bank of Phoenix, and this ruling of the court is assigned as error. It is urged by the appellants that they were not parties to the action in which that judgment was rendered; that they had no opportunity to

23 Ariz.—26

appear and defend against liability, and are not in any way bound by the judgment that was rendered.

Treating the action as one brought by a creditor to enforce payment of his debt out of the assets which were transferred by the debtor corporation, to impress a trust in his favor upon such assets, and to recover to the extent of the assets received by the purchaser, the ruling below is well sustained by authority. The plaintiff in such an action must necessarily show that he is a creditor of the corporation whose assets have been conveyed and from whom he is unable directly to collect his debt. Whether he brings such an action without reducing his debt to judgment, as he may, under the rule laid down in *First Nat. Bank* v. *McDonough,* 19 Ariz. 223, 168 Pac. 635, or whether he first recover judgment and then bring his action, he must in one form or another establish his claim to be a creditor of the corporation whose property has been conveyed away to his prejudice. The rule applicable to ordinary creditor's bills has long been settled. If the plaintiff allege a debt not reduced to judgment, he must, of course, prove the debt. If he allege a recovery of judgment, he must likewise prove the judgment, and the judgment is admissible for the purpose of establishing that plaintiff is a creditor of the corporation whose assets he seeks to follow and from which to collect the amount of his debt.

A judgment against a donor or grantor, whether rendered prior or subsequent to conveyance, which is impeached, is, in the absence of fraud or collusion, conclusive evidence of a debt existing at the time of its rendition and the amount of the indebtedness, and the grantee can never inquire into its merits nor allege errors or irregularities which could only be corrected in an appellate tribunal. In the ordinary creditor's suit a judgment is not only admissible in

evidence for the purpose of establishing the plaintiff's debt, but in the absence of fraud or collusion is conclusive, not only upon the parties to it, but other creditors or transferees of the judgment debtor. *Pickett* v. *Pipkin,* 64 Ala. 520; *Candee* v. *Lord,* 2 N. Y. 269, 51 Am. Dec. 294; *Swihart* v. *Shaum,* 24 Ohio St. 432; *Sidensparker* v. *Sidensparker,* 52 Me. 481, 83 Am. Dec. 527; *Hersey* v. *Benedict,* 15 Hun (N. Y.), 282.

By pleadings and proof appellants sought to show that the judgment was erroneous, and that in fact Malcolm had no cause of action. It was error to admit evidence for this purpose, but, since the court found for the plaintiff, the error was harmless. It is probable that, had the original action been defended, the defendant might have been successful, under the rule laid down in *Valley Bank of Phoenix* v. *Josten,* 18 Ariz. 365, 161 Pac. 876, but the judgment when rendered became conclusive evidence that a debt existed and of the amount of such indebtedness.

It is asserted that the transfer of the assets of the Valley Bank of Phoenix to the Valley Bank was void, for the reason that the former bank had been closed, its assets taken into possession or control by the bank comptroller, and that, once that situation existed, the affairs of the bank must be handled in the manner provided by paragraph 294, Revised Statutes of 1913 (Civ. Code). Reduced to a brief statement, the contention simply is that, once the comptroller has taken possession of a bank and closed its doors and reported his action to the Attorney General, the latter officer must proceed in the proper court and have the assets of the bank placed in the hands of a receiver for the purpose of liquidation, or restored to the bank, accordingly as the court may determine the question of solvency or insolvency of the institution.

Paragraph 294, Revised Statutes of 1913 (Civ. Code), provides that under certain circumstances it

shall be the duty of the bank comptroller immediately to take exclusive possession and control of the business of such bank and all the property and effects thereof, and to suspend the business of the same, and to hold possession of the same until an order shall be made by the proper court, and to immediately notify the Governor and Attorney General of his action. The statute proceeds:

"It is hereby made the duty of the Attorney General, upon receiving such notification, to immediately commence suit in the proper court against such corporation, firm or individual, and all the directors or officers thereof, to enjoin and prohibit them from the transaction of any further business."

The remainder of the section provides for proceedings in court, the appointment of a receiver, and the winding up of the affairs of the institution.

It is urged that this statute is mandatory, and leaves no discretion in the Attorney General, but requires that he shall in every case, where report to him is made by the bank comptroller, immediately proceed to commence the action provided by statute, and in that manner wind up the affairs of the bank, and that no transfer of assets could lawfully be made after the report of the comptroller to the Attorney General.

There can be no doubt that, once the officer having supervision over banking institutions takes possession under the statute, the proceedings provided by paragraph 294 have precedence over all other methods of liquidating the affairs of a bank by legal proceedings. Other insolvency laws or statutory methods of dissolving a corporation and closing its affairs must yield to the proceedings provided by the particular provision relating to such liquidation and closing by the officers having control and possession of the bank's property. *In re Murray Hill Bank,* 153 N. Y. 199, 47 N. E. 298; *McDavid* v. *Bank of Bay Minette,*

193 Ala. 341, 69 South. 452; *People* v. *Bank of San Luis Obispo,* 154 Cal. 194, 97 Pac. 306.   But the statute goes no further and has no greater effect than to render the mode of liquidation in paragraph 294 exclusive when once the proceedings provided by that statute are initiated by the bank comptroller.   The expression "it is hereby made the duty of the Attorney General" to commence an action in court does not compel that officer to thus proceed in all cases under all circumstances, but, in view of the purpose of the statute and the mischief to be remedied, it leaves some discretion in the Attorney General as to when and whether the action provided by the statute shall be taken.

Language, however mandatory in form, may be deemed directory in effect whenever the purpose of the legislature, in view of the good to be accomplished, can best be carried out by such construction.   Such a view has been taken with even more mandatory language than that of the Arizona statute.   *State ex rel. Black* v. *Taylor,* 208 Mo. 442, 13 Ann. Cas. 1058, 106 S. W. 1023.   The view contended for by appellee would absolutely prevent the reorganization or reopening of a suspended banking institution or the taking it over, except through a sale by a receiver, by another institution.   The practice of reopening or reorganizing banks whose condition has been such as to require their temporary suspension is too common and too beneficial to all interested, as well as to the public generally, to be done away with by a construction of a statute, unless its terms imperatively require that conclusion.   The failure of a bank and the permanent closing of its activities and the winding up of its affairs through a receiver may in many instances be a public calamity, and the avoiding of such result is not to be prevented unless the legislature by the most unmistakable language has so enacted.   If

in the Attorney General's judgment the interest of the creditors of the bank and those interested in it might be best subserved by a reorganization or by a transfer to another institution, which assumes its liabilities, there is nothing in the statute that prohibits such action, and nothing so mandatory in the direction given by the statute as to compel the Attorney General at all events to immediately commence an action which would result in the appointment of a receiver and the closing of the affairs of the bank in that manner. The transfer in this case was made with the approval, or at least with the consent, of the bank comptroller and the Attorney General and by agreement between the depositors of the Valley Bank of Phoenix and the directors of that institution, and the legality of such transfer must therefore be determined, so far as Malcolm's rights are concerned, as if such transfer had been made voluntarily by the Valley Bank of Phoenix without reference to the possession of its assets then being in the bank comptroller.

It remains, therefore, to determine the effect of such transfer and to what extent the rights of Malcolm under his judgment and the indebtedness upon which it was recovered may be asserted against the purchasing debtor.

The doctrine that the assets of a private corporation constitute a trust fund for the benefit of its creditors, though often criticized or sought to be limited, is too firmly established by judicial decision to be longer questioned. The validity of transfers of corporate assets as against creditors of the transferring corporation has often come before the courts and has resulted in a number of decisions from which may be extracted certain general rules, though courts differ in their application, and the authorities on various phases of the question are not always capable of being

reconciled. An elaborate review of the decisions on the subject may be found in the note to *Male* v. *Atchison, Topeka & Santa Fé Co.,* 15 A. L. R. 1098, also reported in 230 N. Y. 158, 129 N. E. 458; the note commencing at page 1112 of the 15 A. L. R.

A statement of the rules, so far as they may be deemed established without controversy, has been recently made in *American Ry. Express Co.* v. *Commonwealth,* 190 Ky. 636, 228 S. W. 433:

"On these facts, the precise question before us is: Will a purchasing corporation that has paid the full purchase price to the selling corporation by the issual of its stock to it be responsible in law, to the extent of the value of the property received, for the debts or liabilities, whether liquidated or unliquidated, or sounding in contract or tort, that were outstanding against the selling corporation at the time of the sale, when the effect of the sale is to leave the selling corporation without any property in the state in which the liability accrued to satisfy it, although except for the sale it would have had ample property in the state that could have been subjected to the payment of the liability, and may have property in some other state that could be subjected to the payment of the liability?

"Questions concerning the responsibility of the purchasing corporation for the debts and liabilities of the selling corporation have come before the courts of the country in many cases, and it is held practically without dissent that, although the purchasing corporation does not assume the payment of any of the debts or liabilities of the selling corporation, it will yet be made responsible for them if there was no consideration for the sale, or if it was not in good faith, but for the purpose of defeating the creditors of the selling corporation, or where there has been a merger or consolidation of the corporations, or where the purchasing corporation took over from the stockholders all of the stock of the selling corporation, or where the transaction amounts to a mere reincorporation or reorganization of the selling corporation. It is also generally agreed that when these conditions exist the

purchasing corporation will be responsible for all the debts and liabilities of the selling corporations, without reference to whether these debts or liabilities were created by contract or arose out of tort, or were liquidated or unliquidated.

"It is equally well settled that when the sale is a *bona fide* transaction, and the selling corporation receives money to pay its debts, or property that may be subjected to the payment of its debts and liabilities, equal to the fair value of the property conveyed by it, the purchasing corporation will not, in the absence of a contract obligation or actual fraud of some substantial character, be held responsible for the debts or liabilities of the selling corporation. Many illustrative cases fully supporting these propositions may be found in volume 5, Thompson on Corporations, § 6517; 7 R. C. L., p. 180; 10 Cyc. 307; notes in 11 L. R. A. (N. S.) 1119; 32 L. R. A. (N. S.) 616; 47 L. R. A. (N. S.) 1058.''

So far the rules may be said to be well settled, and a case coming within those rules is not difficult of determination. The difficulty is with those cases, like the present, whose facts do not bring them within either of the rules stated.

Assuming, for the present, that Malcolm was a creditor of the Valley Bank of Phoenix at the time of the transfer of its assets—a question which will be considered later—the situation shown by the uncontradicted evidence is this: Malcolm had a cause of action against the Valley Bank of Phoenix which could be reduced to judgment, and was so reduced later; that, in good faith and with no actual intent to defraud anyone, the arrangement for the transfer of the assets was made and carried out; that by such transfer the Valley Bank of Phoenix was completely divested of all assets or property of every kind, leaving nothing which could be reached by creditors, and with no provision for the payment of the debts of any creditors except those specified in the agreement of transfer. Whether, under such circumstances, the

creditor for whose debt no provision is made may follow the assets of the debtor corporation into the hands of the purchaser is one upon which the authorities are not entirely agreed. Much depends, of course, upon the circumstances of the particular case, but here the purchasing bank took all of the assets of the selling bank, leaving the latter nothing with which to satisfy the claims of creditors whose debts were not expressly assumed in the contract of purchase. It took with full knowledge of the inability of the selling bank to meet its obligations, for that situation was expressly recited in the contract of transfer. It is not shown that it had any knowledge of the Malcolm claim, and the inference from the evidence is that it did not, but it was bound to know that liabilities might exist, and is chargeable with whatever consequences flowed from its taking over the entire assets of its vendor without any provision being made for possible liabilities later. In such a situation the rule is well stated in the case of *Williams* v. *Commercial Nat. Bank,* 49 Or. 492, 11 L. R. A. (N. S.) 857, 90 Pac. 1012, 91 Pac. 443, as follows:

"The situation, then, is that defendant company did not take the assets of defendant bank, either in what it absorbed in October, 1897, or claims to have purchased in July, 1898, in the due course of business; nor is it an innocent purchaser, but absorbed the defendant bank for the purpose of continuing the business in its own name, and so dealt with said property, charged with full notice of the liability of the assets of the defendant bank for its debts, and took the same *cum onere.* In 10 Cyc. 1265, under the heading, 'Selling out to New Corporation,' it is stated: 'It is not necessary to say that a corporation cannot sell, or in any way alien its property, to the prejudice of its creditors, so as to hinder, delay, or defraud them in the collection of other debts owing by it; and in general, whenever a conveyance is made by a corporation under such circumstances as would characterize it as fraud upon creditors if made by an individual, it

will be set aside in equity at the suit of such creditors, or other appropriate relief will be accorded them. . . . Where one corporation transfers all its assets to another corporation, and thus practically ceases to exist, without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation. This is a necessary extension of the doctrine that the assets of a corporation are a trust fund for its creditors. Such being the equality which equity annexes to them, when the corporation elects to go out of existence, to dispossess itself of them, and to transfer them to another corporation, equity follows the trust fund into the hands of the new taker, and charges the property in the hands of such taker with the debts of the transferrer. In other words, the corporation receiving the assets is charged in equity, as a trustee in respect of such property, with the payment of the debts of the antecedent corporation. And, while the right to follow a trust fund into the hands of a third party depends upon the answer to the inquiry whether such third party took it with knowledge of the trust, the case being one where the trustee who transferred it to him had a power of disposition, yet in such a case as we are supposing, where one corporation transfers all its assets to another, not in the ordinary course of business, the very circumstances of the case imply full knowledge on the part of the transferee of all facts necessary to charge the property in his hands with the debts of the transferrer.' It is not necessary that a fraudulent intent or want of consideration be disclosed. The property is a fund that the law sets apart or charges with a lien in favor of creditors. The debtor corporation cannot dispose of it or encumber it to the prejudice of the creditors, and such a grantee with notice takes subject to such equitable lien. The above text is supported by many cases, viz." (citing cases).

"In *Blair* v. *St. Louis, H. & K. R. Co.* (C. C.), 22 Fed. 38, Mr. Justice TREAT says: 'Was not, however, the respondent's demand now judicially ascertained one of the obligations assumed? Such seems to be a fair construction of the terms of said conveyance; but, if not so, the general principle must con-

trol, viz., that a grantee of corporation assets, as in this case, takes *cum onere;* that it must, under the facts disclosed, be treated as the successor of the prior corporation charged with a trust as to assets received.' This suit was instituted to establish the superiority of this equitable lien over a subsequent mortgage given by the transferee company, and it is held superior if the mortgagee took with notice of the plaintiffs' claim. The authorities seem to be uniform to the effect that the assets of the corporation are subject to an equitable lien in favor of the creditors, and that such creditors may follow such assets, or the proceeds thereof into whosoever hands they can trace them and subject them to such debts, except as against a *bona fide* purchaser for value. And, where a corporation transfers all its assets to another corporation with a view of going out of business, and nothing is left with which to pay its debts, such transferee is charged with notice by the very circumstances of the transaction, and takes the same *cum onere.* Such a case cannot be considered in a sale in the due course of business, even though based on a valuable consideration, as it operates as a fraud against the creditors."

The court also said in that opinion:

"Where a person, whether a stockholder or not, receives the assets of a corporation upon the liquidation of the corporation, whether insolvent or not, if it leaves the corporation without assets with which it can be made to respond to its creditors and the suit is to reach the assets as such or their value, undoubtedly such person should be required to respond to the full amount of the assets so received."

This rule is especially applicable where the selling corporation was in fact insolvent, and the purchaser took with full knowledge of that fact, and there can be no doubt that in this case the finding of the court that the Valley Bank of Phoenix was insolvent at the time of the transfer of its assets is abundantly justified by the evidence, for it is so shown by the testimony of the officers of the bank and the recitals of the contract between the parties.

The purchase by one bank of the assets of another, in consideration of the assumption of debts by the purchasing corporation, equal, or substantially equal, to the value of the assets taken, does not in itself subject the purchasing corporation to liability for other debts of the selling corporation. *Drovers' & M. Bank v. First Nat. Bank,* 260 Fed. 9, 171 C. C. A. 45; *Ezzard v. State Nat. Bank,* 57 Okl. 371, 157 Pac. 127; *Farris v. Hodges,* 59 Okl. 87, 158 Pac. 909. Such transfer, which does not divest the former corporation of all its assets or leave it in a condition in which it is unable to respond to the demands of the creditors, differs in no way from the ordinary purchase, and subjects the purchaser to no greater liability. But when, added to this, the selling corporation is left entirely without assets or means of payment of its debts to creditors whose debts have not been assumed by the purchaser, and the purchase is made with knowledge on the part of the purchaser that such is the situation, if any such debts exist, the rule stated in *Williams* v. *Commercial National Bank, supra,* would seem to be the more reasonable one and best supported by the authorities.

The Valley Bank Adjustment Company is in no different situation than the Valley Bank. Its formation, and the carrying on of the purposes for which it was formed, was merely a means adopted for handling certain assets of doubtful value and their use in reimbursing the Valley Bank for the amount of the indebtedness of the Valley Bank of Phoenix which it had assumed. It therefore is likewise responsible to the extent of the assets it received from the Valley Bank and which constituted a part of the entire assets of the Valley Bank of Phoenix.

The extent of the liability of the purchaser under the circumstances, in the absence of actual fraud, is limited to the value of the assets received by it. *National Bank of Jefferson* v. *Texas Invest. Co.,* 74

Tex. 421, 12 S. W. 101; *Mahaffey Co.* v. *Russell,* 100
Miss. 122, 54 South. 807, 945; *Okmulgee Window Glass
Co.* v. *Frink,* 260 Fed. 159, 171 C. C. A. 195.  In the
latter case will be found a discussion of the rules by
which the extent of the liabiliy is to be fixed.

Was Malcolm a creditor of the Valley Bank of
Phoenix at the time of the transfer of its assets?  His
judgment was not recovered until some months after
the consummation of the transfer, but the record of
the case in which the judgment was rendered shows
that the cause of action arose long prior to such trans-
fer.   Malcolm had the right, at any time after the
fraud of which he complains was consummated, to
pursue any remedy that the law might give him under
the circumstances.   His cause of action existed at all
times after the consummation of the fraud and the in-
jury caused thereby.

There is some apparent difference of opinion among
the courts as to whether a creditor having a cause of
action for tort or unliquidated demand is in a position
to attack a conveyance claimed to be in fraud of his
rights.   In many of the cases the decision was based
upon the construction to be given to the term "credi-
tor," or similar word as used in a statute or contract,
but the general rule supported by the weight of au-
thority is that a person having such a claim is a credi-
tor and may attack a fraudulent or unlawful transfer
which injuriously affects his rights.  *Shean* v. *Shay,*
42 Ind. 375, 13 Am. Rep. 366; 15 C. J. 1574, 1575; 20
Cyc. 430.

Eliminating the unwarranted finding that Malcolm's
claim was one of those expressly assumed by the con-
tract of transfer, the remaining findings are insuffi-
cient to justify the judgment rendered.   The evidence
with respect to the value of the assets received by ap-
pellant and other matters necessary to be determined
is too meager to form the basis of a judgment.   Ac-

cordingly, the judgment should be reversed and the cause remanded for a new trial in accordance with the views herein expressed.

ROSS, C. J., and McALISTER, J., concur.

BAKER, J., was disqualified from acting in this case.