[Civil No. 2317.  Filed November 6, 1925.]

[240 Pac. 351.]

# T. D. LOVE and SEVENTY–NINE MINING COMPANY, a Corporation, Appellants, v. Y. BRACAMONTE, Doing Business Under the Name and Style of "THE PHOENIX GROCERY & MEAT MARKET," SHELBY SHOE COMPANY, a Corporation, TEMPE MILLING COMPANY, a Corporation, C. F. COX, ALICE McFADIN, NOWELL & RUSSELL, a Copartnership, DANIEL McVEIGH, O. H. WHITEMAN, Doing Business Under the Name and Style of "THE POPULAR MARKET," THOMAS QUARRELLI, Doing Business Under the Name and Style of "THE CHAMPION STORE," and FRANK REAGAN (Intervening Creditors Below), Appellees.

1. CORPORATIONS—COMPLAINT OF INTERVENING CREDITORS OF CORPORATION TO HAVE ASSETS IN HANDS OF DEFENDANTS DECLARED TRUST FUND FOR THEIR BENEFIT HELD SUFFICIENT.—In stockholders' suit to set aside contracts of corporation with defendants for sale of options for purchase of mines, complaint, in equitable proceedings by intervening creditors of corporation to have assets in hands of defendants declared a trust fund for their benefit, which alleged a good cause of action against corporation, and, with stipulated consent of defendants, adopted all allegations of stockholders' complaint, *held* sufficient to support judgment against defendants, where it was properly so treated at the trial, in view of Civil Code of 1913, paragraphs 423, 548, 549, and issue of defendants' liability was actually tried out.

2. APPEAL AND ERROR—FAILURE OF COURT TO MAKE FINDINGS OF FACT AS REQUESTED BY DEFENDANT HELD NOT HARMFUL, WHERE JUDGMENT HAD BECOME FINAL AS AGAINST DEFENDANTS.—In stockholders' suit to set aside contracts of corporation with defendants for sale of options held by it on mines, with intervention by corporation creditors to have assets in hands of defendants declared a trust fund for their benefit, failure of court to make findings of fact as requested by defendants *held* not harmful, where judgment was for intervening creditors against corporation,

and it had become final and thereby binding on corporation and also on defendants, its transferees.

3. CORPORATIONS—TRANSFEREE OF INSOLVENT CORPORATION TAKES ITS ASSETS, SUBJECT TO PAYMENT OF ITS LEGITIMATE DEBTS, AND HOLDS SAME IN TRUST FOR THAT PURPOSE.—Transferee of insolvent corporation takes its assets subject to payment of its legitimate debts and holds same in trust for that purpose, especially where transferee has been organized for specific purpose of absorbing all assets of old concern.

4. APPEAL AND ERROR—REVIEWING TRIBUNAL WILL NOT GO TO TRANSCRIPT FOR EVIDENCE TO OVERTURN JUDGMENT OF LOWER COURT.—Reviewing tribunal will not go to the transcript of testimony for evidence to overturn judgment of lower court.

5. APPEAL AND ERROR—ASSIGNMENTS OF ERROR, NOT ARGUED, ARE DEEMED ABANDONED OR WAIVED.—Assignments of error, which are not argued in the briefs, are deemed abandoned or waived.

---

See (1) 14a C. J., p. 937.   (2) 4 C. J., p. 1059.   (3) 14a C. J., pp. 890, 891.   (4) 4 C. J., p. 393.   (5) 3 C. J., p. 1410; 4 C. J., p. 1068.

APPEAL from a judgment of the Superior Court of the County of Pima. W. R. Chambers, Judge. Affirmed.

Mr. Selim M. Franklin and Mr. Gerald Jones, for Appellants.

Mr. Alexander Murry and Mr. Frank E. Thomas, for Appellees.

ROSS, J.—This suit was commenced by Thomas A. Harrison, a minority stockholder of the Continental Commission Company, suing on his own behalf to set aside and annul certain contracts entered into by such company with the defendants T. D. Love and A. O. Jahren relative to the sale by said company of certain options held by it for purchase of the Seventy-Nine group of mines. Thereafter Hugh H.

---

3. See 7 R. C. L. 746.
5. See 2 R. C. L. 178.

Hanger and other minority stockholders and creditors of the Continental Commission Company intervened, alleging the same facts, and asking the same relief as plaintiff Harrison. Bracamonte and other creditors of the Continental Commission Company also intervened and, under stipulations by attorneys representing all parties, joined their claims in a single complaint and were permitted "by reference to incorporate in said complaint all of the allegations made in the complaint in intervention as originally made by H. H. Hanger and as amended in accordance with stipulation," and, in addition, each of such intervening creditors alleged an indebtedness to him from the Continental Commission Company and stated the amount. These creditors prayed judgment against the Continental Commission Company for their respective debts, and for no other relief, unless it be found they asked for other relief by the adoption of the allegations of the Hanger complaint.

After a trial, extending over a long period of time and in which much testimony was taken, the court entered a judgment the purport and effect of which we give in the language of the appellants' brief:

"The judgment of the court was that the intervening creditors have judgment against the Continental Commission Company for their respective claims; that if the Continental Commission Company, plaintiff, or any of the interveners, repaid to Love by August 1, 1922, the sum of some $70,000 expended by him under his contract and still unpaid to him, the Seventy-Nine Mining Company should execute a deed conveying the Seventy-Nine group of mines to the old company; that the Continental Commission Company should recover from the Jahren estate some $24,000; and that, in the event the $70,000 was not repaid to Love within the time limited, the title to the mines should remain in the Seventy-Nine Mining Company and be quieted as against any claims of the

old company or any of the intervening stockholders, but in that event the intervening creditors should have judgment also against Love and the Seventy-Nine Mining Company for their respective debts."

This appeal is taken from that part of the judgment in favor of the intervening creditors and against Love and the Seventy-Nine Mining Company for their respective debts against the Continental Commission Company.

If it has not already been made to appear in the description of the court's judgment, we will, for clarity, say that the option held by the Continental Commission Company on the Seventy-Nine group of mines, and by it assigned to Love, was in turn assigned by Love to the Seventy-Nine Mining Company, and whatever title the former company had was confirmed in the latter company by the judgment of the court.

We will take up and dispose of the several assignments generally in the order they are presented in appellants' brief. The first is as follows:

"The pleadings of said intervening creditors, appellees, do not state any cause of action against said defendants T. D. Love and Seventy-Nine Mining Company, or either of them, to support a judgment for the recovery of money, nor was any such judgment prayed for in said interveners' complaint or in any pleadings in said case, and the court erred in rendering any money judgment against these defendants, in this action."

It is obvious that, if the appellees wanted a judgment against the Continental Commission Company only, they would not have intervened in this equitable proceeding, but would have sued that company alone. The only purpose they could possibly have had in joining in this action was to assist the plaintiff and other interveners in preventing the assets of the

Continental Commission Company from passing out
of their reach, and to subject such assets in the hands
of the transferees to the payment of their debts.
This was fully recognized by appellants Love and the
Seventy-Nine Mining Company, as we shall show
later.

The complaint, now for the first time so strenu-
ously objected to for lack of substance, was not as
formal and explicit, perhaps, as it should have been.
It, however, alleged a good cause of action against
the original debtor and, in addition, with the stipu-
lated consent of appellants, adopted all of the allega-
tions of the complaint by Hanger, who, as a minority
stockholder and also as a creditor of the Continental
Commission Company, had attacked the sale of the
latter company's option on the Seventy-Nine group
of mines to appellants. But it is said the adoption
of the allegations of the Hanger complaint in no way
aided appellees' complaint because of the difference
in the nature of the causes of action and the relief
sought. Intervener Hanger's interests as a plaintiff
against appellants were twofold: (1) To set aside the
transfer of property to Love and the Seventy-Nine
Mining Company which would inure to the benefit of
the Continental Commission Company and to him as
a stockholder; and (2) as a creditor, to collect his
debt against that company out of assets in the hands
of the transferees in case the sale was confirmed. In
this latter respect his position was on all-fours with
appellees, and the allegations of his complaint being
sufficient to sustain a judgment for his debt against
appellants, on the assumption that such assets were
a trust fund for the benefit of creditors, and such al-
legations being adopted as a part of appellees' com-
plaint, the latter must also be sufficient. Hanger,
however, did not expressly pray for judgment against
the transferee of property, and neither did appellees,

and it is said in the absence of such a prayer no such judgment could be rendered. Hanger's complaint, among other prayers, prayed for "such other and further relief herein as to the court may seem meet and proper in equity."

It is significant that appellants, without demurring to appellees' complaint, interposed a general denial thereto and an answer to the effect that the Continental Commission Company had other effects to which appellees ought in equity be required to resort in satisfaction of their demands before seeking to subject the assets of the Continental Commission Company transferred to them to such debts. In other words, appellants knew from the beginning that appellees' purpose in intervening was to have the property of the Continental Commission Company transferred to them declared a trust fund for the benefit of the creditors of said company, and they not only formed their pleadings on that theory, but participated in the trial, which was fought out on that theory without objection to the sufficiency of appellees' complaint or the competency of the evidence introduced in support thereof. If it be conceded the appellees' complaint was defective, the appellants themselves disregarded such defect and proceeded with the trial as though it was sufficient, and surely the court could not have been in serious error in acquiescing in their oversight since the statute makes it the duty of the court to "disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties," and further provides that "no judgment shall be reversed or affected by reason of such error or defect." Paragraph 423, Civ. Code 1913. Under other provisions the judgment is required to conform to the pleadings, the nature of the case proved, and to be so

framed as to give the party all the relief to which he may be entitled either in law or equity; and, when an answer is filed, the plaintiff may have relief consistent with the complaint and within the issue actually tried. Paragraphs 548, 549, *supra.*

It is clear to us that the appellees' complaint was sufficient to support the judgment against appellants; also that it was so treated at the trial and that the issue of appellants' liability was actually tried out. For all these reasons, assignment 1 is disallowed.

Complaint is made of the failure or refusal to make findings of fact upon the request of appellants. From the view we take of the case, it is not necessary to pass upon this question, for, even if the court did err in not complying with the request, it could work no prejudice to the appellants.

It will be observed from our statement of the judgment that it was in favor of appellees and against the Continental Commission Company for the respective demands of appellees. That judgment has become final. By it, it is settled that the Continental Commission Company was and is indebted to the appellees in the amounts therein adjudged against it. It does not question and cannot now question such judgment, and neither can the appellants. The rule announced in *Valley Bank* v. *Malcolm,* 23 Ariz. 395, 204 Pac. 207, is conclusive on that question. We there said:

"A judgment against a donor or grantor, whether rendered prior or subsequent to conveyance, which is impeached, is, in the absence of fraud or collusion, conclusive evidence of a debt existing at the time of its rendition and the amount of the indebtedness, and the grantee can never inquire into its merits nor allege errors or irregularities which could only be corrected in an appellate tribunal. In the ordinary creditor's suit a judgment is not only admissible in evidence for the purpose of establishing the plain-

tiff's debt, but in the absence of fraud or collusion is conclusive, not only upon the parties to it, but other creditors or transferees of the judgment debtor. *Pickett* v. *Pipkin,* 64 Ala. 520; *Candee* v. *Lord,* 2 N. Y. 269, 51 Am. Dec. 294; *Swihart* v. *Shaum,* 24 Ohio St. 432; *Sidensparker* v. *Sidensparker,* 52 Me. 481, 83 Am. Dec. 527; *Hersey* v. *Benedict,* 15 Hun (N. Y.), 282.''

If the case were reversed and remanded for a new trial, the appellants would be confronted with a settled judgment in favor of all of these appellees against the Continental Commission Company, appellants' transferor—conclusive evidence, under the above rule, of the amount of their demands against the debtor as also against the transferees of such debtor. If appellants had not been parties to the action in which such judgment was entered, with the right and power to interpose any and all defenses, they would be permitted, in case the judgment was offered as evidence concluding them, to impeach such judgment for fraud and collusion, but on no other account. Appellants being parties to the action, interested in the subject matter with the right to defend, did not by pleadings or otherwise make fraud or collusion an issue in the trial. They are not therefore in a position to urge such grounds for a new trial as to the judgment against them, nor would they be in position if granted a new trial to show that the judgment against the Continental Commission Company was obtained through fraud or collusion, because that judgment had become final and as binding upon appellants as upon the Continental Commission Company. If we are right in our conclusion on this point, they have suffered no harm from the court's failure to make findings of fact.

It is also said no evidence was introduced to support or tending to support the judgment, or to prove

or tending to prove that appellants were indebted to appellees. This assignment we think completely overlooks the theory of the whole case. As heretofore indicated, the purpose of the intervention by appellees in this equitable proceeding was to have the assets in the hands of the appellants declared a trust fund for the benefit of the creditors of the Continental Commission Company. Now, the settled law of this jurisdiction, and generally, is that a transferee of an insolvent corporation takes the assets of such corporation subject to the payment of its legitimate debts and holds the same in trust for that purpose; and that is especially true where the transferee (as in this case) has been organized for the specific purpose of absorbing all the assets of the old concern. This suit is not prosecuted against the transferees on the theory that they are debtors, in the ordinary sense in which that word is employed, nor upon an express promise to pay, but upon the theory that the funds or assets they obtained in the transaction with the old company are held by them as a trust fund for the benefit of the latter's creditors. *Valley Bank* v. *Malcolm, supra; Northern P. R. Co.* v. *Boyd,* 228 U. S. 503, 57 L. Ed. 942, 33 Sup. Ct. Rep. 554.

Appellants contend that the Continental Commission Company had other assets than the option on the Seventy-Nine group of mines out of which appellees could have collected their debts against it, and that the sale or transfer of option to them did not leave such company insolvent; and refer, generally, without indicating more particularly, to the transcript of the testimony for evidence to support such contention. In the abstract of the testimony, which was prepared by appellants under our rules to assist the court in its labors, we find no evidence of other assets. However, in a supplemental abstract filed by

appellees there is evidence to the effect that the Continental Commission Company had no other property than what appellants got, except perhaps an equity of two hundred and fifty dollars in a lot somewhere in Texas. It is shown that it had owned two other groups of unpatented mines in Arizona, but had become convinced of their worthlessness and had ceased to do the annual assessment work on them. We might sometimes go to the transcript of the testimony for evidence to sustain a necessary finding of fact to support a judgment of the lower court, but not to overturn it.

Assignments 4 and 5 are directed at the sufficiency or total lack of evidence to support the judgments in favor of appellees McFadin and Reagan. As heretofore shown, appellants are concluded to question these judgments now as they have become final as to the transferor and likewise as to them. However, it is asserted by appellants that the judgment in favor of Reagan is excessive by some nine hundred dollars and that such excess is due to clerical error in omitting to credit Reagan's account with certain admitted payments thereon. The trial court will know upon an examination of the records if this is true, and if it finds the judgment is excessive, and such excess is due to clerical error, will direct a proper correction. 34 C. J. 229, § 450.

Finally, it is contended by Love that in his contract with the Continental Commission Company his liability for its debts was expressly limited to twenty-four or twenty-five thousand dollars, and that the uncontradicted evidence is that he paid that amount and more of such debts, and that therefore the judgment against him is unsupported by the evidence. Counsel for appellants have not argued this assignment in their briefs. Under our decisions, this fail-

ure or neglect is regarded as an abandonment or waiver of the assignment.

The judgment is affirmed.

McALISTER, C. J., concurs.

Judge LOCKWOOD, having participated in the trial of the case, took no part in this decision.