544 P.2d 682

Robert W. CHAPLINE, Sr., and Robert W. Chapline, Jr., Appellants,

v.

NORTH AMERICAN ACCEPTANCE CORP., a Georgia Corporation, and North American Acceptance Corporation of Arizona, Inc., an Arizona Corporation, Appellees.

No. 2 CA–CIV 1504.

Court of Appeals of Arizona, Division 2.

Jan. 6, 1976.

Rehearing Denied Feb. 11, 1976.

Review Denied March 9, 1976.

**466**

Evans, Kitchel & Jenckes, P. C., by Gary H. Fry, Phoenix, for appellants.

Jennings, Strouss & Salmon by Charles E. Jones, Phoenix, for appellees.

## OPINION

HOWARD, Chief Judge.

In 1967 appellants, hereinafter referred to as Chapline, bought a lot from Desert Carmel Development Corporation (Desert Carmel) in Casa Grande, Arizona. The lot was purchased under a contract for the sale of real estate.

Chapline contracted with Empire Construction Company (Empire) to build a house on their lot. The total contract price was $18,450. Although Empire was to complete construction on the house within three months, a year later it had not been completed. Because of the precarious financial condition of Empire, Desert Carmel informed Chapline not to make any further payments to Empire; that Empire had been removed from the job, and Desert Carmel would complete the construction. At this time Chapline had paid to Empire $16,156.27. Additional credits left a balance of $844.93 which Chapline owed for the completion of the house.

In order to complete construction Chapline entered into a written contract with Desert Carmel to complete the construction for the balance due on the construction contract. The contract with Desert Carmel stated:

"This contract will consist of supplying material and labor necessary to complete the verbally promised concrete walk and driveway and the items we discussed this morning:

1. Remove stops (living room windows) and recaulk.

2. Waterproof outside planter box.

3. Fix storage room lock (adjacent to carport).

4. Replace soap dish in bathroom area.

5. Install & furnish lavatory (master bedroom).

All of the above described items to be completed for the contract sum of $844.-93 incl. tax."

Before the construction could be completed, a windstorm damaged the Chapline house and other houses under construction in the Desert Carmel subdivision.

At the time of the storm Chapline had no insurance on the house but Desert Carmel Development Corporation had a policy with Hawaiian Insurance & Guarantee Company, Ltd., the applicable terms of which will be later set forth.

Desert Carmel filed a proof of loss affidavit with the insurance company for damage to certain homes including the Chapline home. In the affidavit Desert Carmel stated it was the sole owner of the home. After a thorough investigation, Hawaiian Insurance Company paid Desert Carmel for the losses including the sum of $22,915.-84 for the damage to the Chapline home. Desert Carmel did not pay any of the proceeds to Chapline but instead spent the money for its own purposes. The adjuster who investigated the claim testified at trial that he did not know Chapline was the owner of the house and had he known, he would not have recommended to the insurance company that the claim be paid.

Appellees North American Acceptance Corporation and North American Acceptance Corporation of Arizona were financing Desert Carmel in the development of the subdivision containing Mr. Chapline's lot. Due to the unsteady financial position of Desert Carmel, North American Acceptance Corporation formed a wholly owned subsidiary, North American Acceptance Corporation of Arizona, and caused the assets of Desert Carmel to be transferred to the subsidiary. At the time of the transfer of these assets Desert Carmel was insolvent.

The first amended complaint was in five counts. Counts One and Two were only against Desert Carmel, alleging receipt of, and conversion by Desert Carmel of the insurance proceeds. Counts Three and Five, were against North American alleging a transfer in fraud of creditors. Count Four was against Desert Carmel and North American alleging fraudulent conveyance. North American answered all counts of the complaint. Desert Carmel also filed an answer to the complaint but later was defaulted by Chapline for failure to answer interrogatories. A default judgment was entered against Desert Carmel and in favor of Chapline for $22,915.84 for the insurance proceeds allegedly converted, $4,146.75 for costs incurred in borrowing the amount of the allegedly converted proceeds, and $20,000 for exemplary damages.

Chapline's claim against appellees was tried to a jury. By means of a special interrogatory the jury was asked whether the insurance was paid to Desert Carmel by mistake. The jury answered this interrogatory in the negative and returned a verdict against appellees in the sum of $22,965.84 (the $22,915.84 paid to Desert Carmel by the insurance company plus $50 the deductible amount on the policy).

Appellees moved for judgment n. o. v. and the trial court granted the motion to the extent that a remittitur was ordered, reducing the judgment to $4,364.38. This amount was the balance owed by Chapline to Desert Carmel on the contract for the sale of real estate at the time the house was damaged. Chapline appealed. Appellees also perfected an appeal, which we deem abandoned since they filed no briefs as to their cross-appeal.

Appellants present the following questions for review:

"1. Did Mr. Chapline's judgment against Desert Carmel conclusively establish his status as a 'creditor'?

2. If not, does NAAC have standing to challenge the propriety of the payment of insurance proceeds to Desert Carmel?

3. If the judgment is not conclusive on the issue of Mr. Chapline's 'creditor'

status, and NAAC does have standing to challenge the propriety of the payment of insurance proceeds to Desert Carmel, were the insurance proceeds properly paid to Desert Carmel?"

▇▇▇ It was incumbent upon appellants to prove that they were creditors within the meaning of A.R.S. Sec. 44–1004. Appellants initially attempted to do this by offering into evidence their default judgment against Desert Carmel as conclusive proof of their creditor status. The trial court refused to admit the judgment. Appellants claim this was error. Since the jury returned a verdict in their favor, appellants would normally not be aggrieved by the error. However, appellants claim that the judgment was conclusive under the doctrine set forth in *Valley Bank v. Malcolm,* 23 Ariz. 395, 204 P. 207 (1922), ergo, the trial court could not award them less than $22,965.84, the amount of their judgment against Desert Carmel. We do not agree.

In the case of *Valley Bank v. Malcolm,* supra, the creditor first secured a judgment against the debtor and then, in a separate action, sued the transferee in an action to set aside the transfer of the debtor's assets to the transferee. In denying the transferee the right to contest the judgment in favor of the creditor against the transferor-debtor, the court stated at 23 Ariz. 395, 402–403, 204 P. 207, 210:

"Treating the action as one brought by a creditor to enforce payment of his debt out of the assets which were transferred by the debtor corporation, to impress a trust in his favor upon such assets, and to recover to the extent of the assets received by the purchaser, the ruling below is well sustained by authority. The plaintiff in such an action must necessarily show that he is a creditor of the corporation whose assets have been conveyed and from whom he is unable directly to collect his debt. Whether he brings such an action without reducing his debt to judgment, as he may, under the rule laid down in *First National Bank v. McDonough,* 19 Ariz. 223, 168

P. 635, or whether he first recover judgment and then bring his action, he must in one form or another establish his claim to be a creditor of the corporation whose property has been conveyed away to his prejudice. The rule applicable to ordinary creditor's bills has long been settled. If the plaintiff allege a debt not reduced to judgment, he must, of course, prove the debt. If he allege a recovery of judgment, he must likewise prove the judgment, and the judgment is admissible for the purpose of establishing that plaintiff is a creditor of the corporation whose assets he seeks to follow and from which to collect the amount of his debt.

A judgment against a donor or grantor, whether rendered prior or subsequent to conveyance, which is impeached, is, in the absence of fraud or collusion, conclusive evidence of a debt existing at the time of its rendition and the amount of the indebtedness, and the grantee can never inquire into its merits nor allege errors or irregularities which could only be corrected in an appellate tribunal. In the ordinary creditor's suit a judgment is not only admissible in evidence for the purpose of establishing the plaintiff's debt, but in the absence of fraud or collusion is conclusive, not only upon the parties to it, but other creditors or transferees of the judgment debtor. [citations omitted]

By pleadings and proof appellants sought to show that the judgment was erroneous, and that in fact Malcolm had no cause of action. It was error to admit evidence for this purpose, but, since the court found for the plaintiff, the error was harmless. . . ."

The rationale of the *Valley Bank* case is that an attack on the previous judgment constituted an impermissible collateral attack.

"Such judgment regular upon its face is immune from attack in any action other than that in which it was rendered except upon proof of fraud or want of jurisdiction, [citations omitted] and is con-

clusive, whether rendered on default or after contest, as to the relation of debtor and creditor between the parties and the amount of indebtedness and cannot be collaterally impeached by the grantee of the debtor in a suit to set aside the conveyance as fraudulent. 37 C.J.S. Fraudulent Conveyances § 349, p. 1182." *Dillon Tire Service, Inc. v. Pope,* 243 S.C. 293, 133 S.E.2d 813, 815 (1963).

But appellees' attack in this case was not a collateral attack but was in the same proceedings. The rule in *Valley Bank v. Malcolm,* supra, was not applicable. In a similar case, *Fidelity & Casualty Co. v. Bank of Plymouth,* 218 Iowa 1083, 255 N.W. 713, 717 (1934) the court stated:

"The appellant claims that the lower court erred in not entering a judgment against Valentine, who made no defense, and that, since Valentine made no defense, the appellant is entitled to judgment against him because Valentine was in default. But the record shows that Gertrude B. Huntley, whom the appellant claims was a fraudulent grantee, interposed a defense. She had a right to interpose any defense to a creditor's claim that the alleged debtor could interpose, and if the defense is successfuly [sic] made, then the creditor has no right to assail the conveyance. This is the rule laid down in 27 C.J., 578, § 645: 'Where a party claiming to be a creditor attacks a conveyance by the alleged debtor as in fraud of his rights, the primary fact to be established is the existence of the debt to which the property conveyed would be subject if the conveyance did not stand in the way, obstructing legal remedies to reach it, and the demand of the creditor must be subject to examination in order to see whether he has a right as such to question the validity of the conveyance. Parties claiming under the conveyance have not only the right to require proof of the debt, but the grantee in a conveyance attacked as fraudulent is entitled to set up any defenses not merely personal that the

grantor might have invoked in a direct suit against him on the claim, . . . .' "

Under the insurance policy here, Desert Carmel was the insured and Business Finance Company, Inc. was the beneficiary of a loss payable clause contained in the policy. The policy was for dwellings in the course of construction and covered such dwellings " . . . only while the property of the insured, or the property of others for which insured is legally liable. . . . " The insurance covered such dwellings until thirty days after occupancy of the property. The policy stated that if the subject of the insurance was a building or ground not owned by the insured in fee simple, such property was excluded from coverage. The exclusion provisions further stated: "This insurance shall not be void nor in any way prejudiced: if the interest of the insured be other than unconditional and sole ownership." The construction on Chapline's lot was specifically listed in the insurance policy.

It is appellees' position that Desert Carmel's insurable interest was limited to the balance due from Chapline on its contract for the sale of real estate and that all amounts paid Desert Carmel over and above this amount were paid by mistake. Chapline contends this defense is only available to the insurance company but appellees counter by asserting they are not attempting to show title in a third person but only that Chapline has no interest in the proceeds. They contend that since Chapline was not the named insured, Chapline has not shown any right to the proceeds. We do not agree with appellees.

■ The relationship between Desert Carmel and Chapline was that of vendor and vendee. When the improvements were placed on the lot they became part of the real property. *Fish v. Valley Nat. Bank of Phoenix,* 64 Ariz. 164, 167 P.2d 107 (1946). The purchaser under a contract of sale is the equitable and beneficial owner of the property and bears the risk of loss. *Kresse v. Ryerson,* 64 Ariz. 291, 169 P.2d 850 (1946). The rule applicable when the

insurance is in the name of the vendor and the risk of loss falls on the vendee is set forth in *Brakhage v. Tracy,* 13 S.D. 343, 83 N.W. 363, 364 (1900) :

"   *   *   *   When the insurance was obtained, appellant held the policy for the benefit of himself to the extent of his interest in the land, and payment of the price agreed upon according to the terms of the contract is all he can rightfully demand. Confessedly, he entered into a valid contract to sell and convey the real estate described in the complaint for consideration which respondent, without any default, stands ready to pay, less the amount received by him from the insurance company in settlement of a loss which she alone has sustained. As between the parties to a contract like this, the indemnity, when paid by the company, belongs to the one upon whom the loss falls; and payment of the entire amount collectible according to the contract, after allowing a credit of $800 [insurance money], entitles respondent to the deed which appellant obligated himself to execute. Having thus alienated this improved real property by an executory contract, he became the trustee of the policy for the benefit of respondent, and in such cases failure to perform on the part of the vendee is the only condition that will relieve a vendor from the duty of executing his trust. . . . Respondent being the equitable owner, and as such compelled to sustain a $1,350 loss, it certainly does not go beyond the reason of the rule to require appellant, who has not been injured, to credit her with this insurance money, and upon receipt of the balance due execute a deed in conformity with the contract of sale. . . ."

See also *William Skinner & Sons Shipbuilding & D. D. Co. v. Houghton,* 92 Md. 68, 48 A. 85 (1900) ; 44 Am.Jur.2d Insurance, Sec. 1652; Annot. 37 A.L.R. 1324 (1925).

As between Desert Carmel and Chapline, Desert Carmel was a trustee for the benefit of Chapline of all funds in excess of the balance due on the contract for sale.

The defense of lack of coverage is a defense available in this situation only to the insurance company. Desert Carmel could not defend an action against it by Chapline by asserting that the insurance company should never have paid the money.

The cross-appeal is dismissed. The judgment is set aside and the trial court is ordered to enter a judgment in favor of appellants and against appellees in the sum of $19,065.35 (the $22,915.84 in insurance proceeds less the $3,850.49 due on the contract of sale).

KRUCKER   and   HATHAWAY,   JJ., concur.